## Civil Service Commission v. Carty

*Thomas A. Matthews*, for appellant.

*Leonard L. Ettinger*, assistant city solicitor, and *Abraham L. Freedman*, city solicitor, for Civil Service Commission of Philadelphia.

Bok, P. J., June 8, 1953.—Respondent appealed from an order of the civil service commission of the city affirming his discharge as an investigator in the department of collections under the receiver of taxes.

The civil service commission then filed a rule on respondent to show cause why his appeal should not be dismissed. Its argument is that section 7-201 of the Home Rule Charter provides that a decision of the civil

service commission shall be final and unappealable except on jurisdictional or procedural grounds: further, that the Act of September 29, 1951, P. L. 1654, which allows appeals broadly, is invalid because the legislature may not modify the administrative procedure set up by the charter.

We are not so much concerned with the commissioner's rule as with respondent's appeal, since the case presents exactly the same facets as Philadelphia Civil Service Commission v. Wilson, 373 Pa. 583. The impact of the Act of 1951 upon the charter need not be decided, since it is a preliminary step to observe that we should not substitute our wisdom or discretion for that of the commission or interfere with its action if there is competent supporting evidence and no capricious disregard of competent evidence: Hayes v. Scranton et al., 354 Pa. 477 (1946); Berberian Zoning Appeal, 351 Pa. 475 (1945); Byham v. Pennsylvania Public Utility Commission, 165 Pa. Superior Ct. 253 (1949); Cain Unemployment Compensation Case, 167 Pa. Superior Ct. 583 (1950); Sauers Unemployment Compensation Case, 168 Pa. Superior Ct. 373 (1951).

The facts are that respondent, already employed as above stated, was asked to fill out a questionnaire. At the top of the paper are the statements: ". . . facts must be correctly stated . . ." and, in large type, "Be careful not to misrepresent facts, as to do so will be considered a serious offense."

One of the questions was: "Have you a police record of any sort?" To this respondent answered "No." At the hearing it was proved, and respondent admitted, that he had been arrested in 1945 during a raid on the Home Civic Association, the charges being a violation of the liquor and gambling laws. Upon it appearing at trial that respondent had no connection with the management of the Home Civic Association, his demurrer

to the evidence was sustained and he was discharged. At the hearing before the Civil Service Commission he explained his negative answer to the question by saying that he thought a police record meant both arrest and conviction, and that since he had been arrested but not convicted he regarded himself as having no police record.

It is obvious that "a police record of *any* sort" must include respondent's view and called for a disclosure of his arrest, whatever the outcome. He was fingerprinted and must have known that he was on record with the police. His innocence of crime was irrelevant to the inquiry, and he was given the chance, which he did not avail himself of because of his answer, to explain to the commissioner of revenue at the private interview that the questionnaire promised him on its face.

Respondent's job as investigator is to some degree confidential and required integrity. It was described as follows in the testimony:

"Mr. Carty is an investigator in the bureau of enforcement in the department of collections. His work includes outside field contact with taxpayers whose taxes are delinquent for the purpose of inducing such persons to pay their taxes; in certain instances, making up the return forms, and establishing a liability, and also collecting the taxes. He is also required to make reports of his interviews with taxpayers, particularly visits to delinquent taxpayers who are delinquent in the payment of wage and income taxes; but his duties would also include other types of delinquent taxes such as visitation of parking lots, amusement taxes; and although he specifically was never assigned to it, to my knowledge, his duties would also include service of liens under the Act of 1883, on tenants for the failure to pay real estate taxes, and other related field work as he would be assigned."

Other witnesses stated that they did not feel he could be trusted in such work when he answered the questionnaire falsely. They had no other reason to mistrust him and his false answer was the sole cause of his discharge.

Thus there is supporting evidence, and in view of the nature of respondent's job we cannot say that his discharge was unreasonable. If he was intelligent enough to do this kind of work he was intelligent enough to know the implications of the question, and his trustworthiness for his task was a discretionary issue for the commission to solve.

If we held that we had no jurisdiction to hear this appeal, respondent would lose. If we held that we had jurisdiction and could broadly examine the merits and the penalty de novo, it is apparent that he would also lose. It is therefore unnecessary to consider the fundamental legal question.

The appeal is therefore dismissed and the action of the civil service commission is affirmed.