[J-114-2016] [MO: Dougherty, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| GARY H. POWELL | : | No. 38 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Commonwealth Court dated November |
| | : | 6, 2015 at No. 1704 CD 2014, vacating |
| | : | and remanding the order of the UCBR |
| UNEMPLOYMENT COMPENSATION | : | dated August 13, 2014 at No. B-13-09- |
| BOARD OF REVIEW | : | D-B064 |
| | : | |
| JOE KRENTZMAN & SONS, INC., | : | SUBMITTED:  September 14, 2016 |
| | : | |
| Intervenor | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  UNEMPLOYMENT | : | |
| COMPENSATION BOARD OF REVIEW | : | |

## DISSENTING OPINION

**JUSTICE TODD**                                        **DECIDED:  March 28, 2017**

At issue in this appeal is principally a question of statutory construction:  in allowing representation in unemployment compensation hearings to be performed by "an attorney or other representative," 43 P.S. § 774, did the legislature intend to exclude suspended attorneys?  The majority never fully addresses this question; rather, in my view, it conflates this Court's undisputed authority over attorneys with a putative obligation of the Unemployment Compensation Board of Review (the "Board") to enforce our disciplinary pronouncements.  In so doing, the majority allows the Board to overlook its own governing statute.  Instead, that statute — 43 P.S. § 774 — should be our starting and ending point.  Thus, and for the following reasons, I respectfully dissent.

Powell relies on Section 774 as authority for his right to select any person, including a suspended attorney, as his representative before the Board. Section 774 provides: "Any party in any proceeding under this act before the department, a referee or the board may be represented by an attorney or other representative." 43 P.S. § 774.[1] By its use of the phrase "attorney or other representative," the legislature seemingly intended to allow a party to be represented by *anyone*, irrespective of their authorization to practice law. This intent controls our interpretation. *See* 1 Pa.C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."). However, to the degree there is any ambiguity in this conclusion, I find that the circumstances under which this statute was enacted, and its related legislative history, resolve it. *See id.* § 1921(c) (when the words of a statute are ambiguous, we may discern the legislature's intent by considering, *inter alia*, the occasion and necessity for the statute, the circumstances under which it was enacted, and the contemporaneous legislative history).

Prior to the enactment of Section 774, in *Harkness v. Unemployment Comp. Bd. of Review*, 867 A.2d 728 (Pa. Cmwlth. 2005) (*en banc*), the Commonwealth Court addressed the question of whether a non-attorney, non-employee was engaged in the unauthorized practice of law when he represented an employer at an unemployment compensation hearing. Therein, Macy's Department Store contested a claim for unemployment compensation. At the hearing, Macy's was represented by an employee of an out-of-state company in the business of representing companies in unemployment compensation matters; the representative was not an attorney. The claimant was

---

[1] Section 862 more specifically provides claimants with the right to be represented by "counsel or other duly authorized agent." 43 P.S. § 862. While the language of Section 862 and 774 are substantially the same, Powell relies on the more general authority of Section 774.

denied benefits and appealed to the Board wherein she challenged Macy's representation by a non-attorney. The Board rejected that challenge; however, on further appeal, the Commonwealth Court reversed that determination. After noting the general rule that non-attorneys may not represent parties in court or before administrative agencies, the court observed one exception to that rule, allowing claimants in unemployment compensation proceedings to be represented by a non-lawyer. 867 A.2d at 731 (citing 43 P.S. § 862 ("Any individual claiming compensation in any proceeding before the department, the board, or referee may be represented by counsel or other duly authorized agent.")). However, finding no similar statutory allowance for a corporate employer, the court concluded that Macy's representative was engaged in the unauthorized practice of law, and that Macy's, as a corporation which can only act through its agents, must be represented by an attorney at such proceedings. The *Harkness* decision was issued in February 2005.

Four months later, the legislature passed various amendments to the Unemployment Compensation Law, including the addition of Section 774, which provides, as previously noted, that any party in unemployment compensation proceedings may be represented by an attorney "or other representative." 43 P.S. § 774. The legislative history makes plain that the bill's purpose was to respond to the *Harkness* decision, and allow any party, including corporate parties, to be represented by non-attorneys. *See* Pennsylvania House of Representatives Legislative Journal, 2005 Regular Session, No. 34 (June 7, 2005), at *31 (remarks of Representative Belfanti: in discussing the *Harkness* decision, noting that claimants may be represented at unemployment compensation hearings by non-attorneys, and that "if one party should be allowed to be represented by experts other than attorneys, why not both sides? And that is what this legislation would correct."); *id.* at *32 (remarks of Representative Gabig:

in noting that legislation was a response to the *Harkness* decision, stated: "The [claimant], they could have their girlfriend representing them as their representatives - and I guess that was not the unauthorized practice . . . . It is just simply not fair."); *id.* at *30 (remarks of Representative Manderino: discussing the *Harkness* decision, but indicating she was voting against the bill because the bill did not exclude non-attorney outside paid consultants from representing a corporation). Indeed, when Governor Rendell signed the bill, he explicitly stated that its purpose was to respond to the *Harkness* decision and allow non-attorney representation. *See* Governor's Message, 189th General Assembly, 2005 Regular Session (June 30, 2005) (noting that the bill "amends the UC State Law to re-establish the ability of any party in a UC benefit proceeding to be assisted by an attorney or other representative. The amendment restores appeals procedures that existed prior to a February 2005 Commonwealth Court ruling in Harkness v. UCBR."). Thus, it is clear that the intent behind Section 774 was to place corporate employers on equal footing with claimants, and to allow any party their choice of representation, whether or not the representative is an attorney.

Although this Court accepted review in *Harkness*, we issued our decision after Section 774 had been enacted. *Harkness v. Unemployment Comp. Bd. of Review*, 920 A.2d 162 (Pa. 2007) ("*Harkness II*"). While the Court issued only a plurality opinion in support of its judgment, a majority of the Court nonetheless reversed the Commonwealth Court's order, thus permitting non-lawyer representation before the Board.[2] The plurality explicitly concluded that representation before the Board was not the practice of law, noting the "scant advising as to legal rights and responsibilities," the

---

[2] On the then-five-member Court, then-Chief Justice Cappy authored the Opinion Announcing the Judgment of the Court, joined by Justice Baer. Now-Chief Justice Saylor concurred in the result.

fact that "enforcement of the law is lacking," the remedial nature of the underlying law, the long history of non-lawyer representatives, and the informal nature of the proceedings, which are designed to be quick and efficient:

> [T]he claims for benefits are not intended to be intensely litigated. Unemployment compensation proceedings are not trials. The rules of evidence are not mandated; there is no pre-hearing discovery; the parties have no right to a jury trial; indeed there is no requirement that the referee be a lawyer. Also, and importantly, there are only minimal amounts of money in controversy. Issues arising in these matters are generally questions of fact not requiring complex legal analysis.

*Id.* at 168 (citations omitted). In addition, without reliance on the enactment of Section 774, the plurality found statutory support for the conclusion that corporations, like claimants, were permitted to be represented by non-lawyers. *Id.* at 170 (citing 43 P.S. § 862; *id.* § 822 ("The parties and their attorneys or other representatives of record and the department shall be duly notified of the time and place of a referee's hearing . . . .")).

In sum, in light of the *Harkness* litigation and the legislature's reaction thereto, I conclude that Section 774 gives parties a broad right to a representative of their choice before the Board — whether that individual is an attorney or not. The majority's discernment of a third category of representatives — suspended attorneys — who are neither an "attorney" nor an "other representative," Majority Opinion at 8-9, to the degree it is an effort at statutory construction, is not grounded in Section 774. Section 774 does not place any limits on the representation and, indeed, was enacted in response to such constraints. Moreover, I see no reason why suspended attorneys should be deemed *ipso facto* less capable of performing activities which the legislature, and seemingly this Court, has decided do not require an attorney at all.

Yet, herein, the Board did not apply Section 774, relying instead on this Court's disciplinary orders to preclude Powell's choice of representation, and the majority

sanctions that approach. However, neither the Board nor the majority has offered a basis for concluding that the Board is bound by this Court's disciplinary pronouncements, or, most importantly, that it may "uphold[] the force and effect of this Court's orders" with regard to suspended attorneys, Majority Opinion at 15, in contravention of its statutory duties.

The Board, as an administrative board within an executive agency, is not part of the Unified Judicial System. *See* Pa. Const. art. V, § 1; *see also* 43 P.S. § 763(c) ("The board shall be a departmental administrative board, and shall have all the powers and perform all the duties generally vested in, and imposed upon, departmental administrative boards and commissions by The Administrative Code . . . ."). While there is a right of appeal from the decisions of our Commonwealth agencies to a court of record, Pa. Const. art. V, § 9, this Court has no general supervisory or administrative authority over such agencies. *See* Pa. Const. art. V, § 10 (setting forth this Court's "general supervisory and administrative authority over all the courts and justices of the peace"); *Hayes v. City of Scranton*, 47 A.2d 798, 801 (Pa. 1946) (discussing that courts "have no general authority of supervision" over an agency's exercise of discretion). Outside of enforcing constitutional or statutory mandates, we have no authority over an agency's rules of practice or procedure. *See Mercy Hosp. of Pittsburgh v. Pennsylvania Human Relations Comm'n*, 451 A.2d 1357, 1359 (Pa. 1982) ("As long as an agency is discharging its legislatively prescribed functions, a court of equity has no authority to dictate its procedure unless it offends due process, or violates the statutory mandate under which the agency receives its authority." (citations omitted)). Moreover, the Board is not a part of our disciplinary system, not a party to our disciplinary orders, nor a subject of our orders. Indeed, members of the Board and its referees are not required to be attorneys. *See* 43 P.S. § 763 (setting forth qualifications of Board and referees).

In short, in my view, the Board is under no legal compulsion to enforce our disciplinary orders; but, more critically, it may not "uphold the force and effect" of our disciplinary orders in a manner contrary to its statutory duties.[3] *Cf. Aetna Cas. & Sur. Co. v. Com., Ins. Dep't*, 638 A.2d 200 (Pa. 1994) (noting that an administrative agency may exercise only those powers conferred by the legislature).

While this Court's role in governing the practice of law is exclusive, in *Harkness II*, a majority of this Court reversed the Commonwealth Court's conclusion that representation before the Board constituted the practice of law, and no one has questioned the constitutionality of Section 774 vis-à-vis this exclusive authority. *See Piunti v. Com., Dep't of Labor & Indus., Unemployment Comp. Bd. of Review*, 933 A.2d 135, 137–39 (Pa. Cmwlth. 2007) (holding, in light of this Court's decision in *Harkness II*, that Section 774 was not an unconstitutional infringement on this Court's exclusive authority to regulate the practice of law).

Thus, Section 774 controls, and this Court's disciplinary orders do not alter the Board's obligation to comply with the statute.[4] Accordingly, I would affirm the

---

[3] I find the majority's citation to *Slater v. Rimar, Inc.*, 338 A.2d 584 (Pa. 1975), to be unpersuasive, as that case held that a *trial judge* — indisputably falling under this Court's supervisory authority and accorded inherent *judicial* power — need not await the disciplinary system and may take measures to avert an attorney's violation of the ethical rules.

[4] I agree with the majority that the Board arguably could have invoked its power to preclude Powell's choice of representation under 2 Pa.C.S. § 503 ("Any Commonwealth agency may, upon hearing and good cause shown, preclude any person from practice before it."). Majority Opinion at 15-16. However, in the instant matter, the Board did not assert this authority as a basis for its decision.

Commonwealth Court's conclusion that Powell was entitled to the representative of his choice before the Board, and would remand on that basis.[5]

For these reasons, I respectfully dissent.[6]

---

[5] I do not address Powell's argument that his equal protection and due process rights were violated by the Board's actions, *see* Majority Opinion at 16-17, as I agree his statutory right was violated.

[6] I also distance myself from the majority's pronouncement that "[b]ecause the suspension orders are enforceable specifically against them as individuals, it was incumbent on Bailey and Ostrowski as formerly admitted attorneys to decline the opportunity to represent appellee." Majority Opinion at 15 n.9. In my view, it is an open question whether this Court has the authority to bar suspended attorneys from participating in activities that this Court has seemingly rejected as being the practice of law. *Harkness II.*