## Pennsylvania Human Relations Commission, Appellant, v. Alto-Reste Park Cemetery Association.

Argued May 22, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

Sanford Kahn, General Counsel, with him Robert Englesberg, Assistant General Counsel, and Israel Packel, Attorney General, for appellant.

Robert E. Woodside, with him R. J. Woodside, James W. Nelson, Shearer, Mette, Hoerner & Woodside, and Nelson, Campbell & Levine, for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 2, 1973:

On January 27, 1970, appellant, the Pennsylvania Human Relations Commission, filed a complaint against appellee, the Alto-Reste Park Cemetery Association, alleging a violation of Section 5(i) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §955(i) (Supp. 1973).[1] The basis of this action was appellee's refusal, on account of race, to bury the remains of the late Dr. George

---

[1] "§955. Unlawful discriminatory practices

"It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

". . . .

"(i) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employe of any place of public accommodation, resort or amusement to

"(1) Refuse, withhold from, or deny to any person because of his race, color, religious creed, ancestry or national origin, or to any person due to use of a guide dog because of the blindness of the user, either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such place of public accommodation, resort or amusement." Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §955(i) (Supp. 1973).

Walker.[2]   After attempts at conciliation proved futile, public hearings were held in Altoona on April 16, 1970.[3]   On April 27, 1970, a final order was issued by the Commission directing appellee to end, through specific measures, its racially discriminatory policies.

Appellee appealed this order to the Commonwealth Court; however, this appeal was discontinued by appellee in the belief that a settlement agreement had been reached between it and counsel for the Commission. The Commission, however, finding the proposed consent decree to be unacceptable, on May 20, 1972, issued an amended final order, substantially similar to its original order.

Appellee again appealed to the Commonwealth Court, which affirmed, with modifications, the Commission's amended final order.   *Alto-Reste Park Cemetery Association v. Pennsylvania Human Relations Commission*, 7 Pa. Commonwealth Ct. 203, 298 A. 2d 619 (1972).   The modifications imposed by the court consisted of deleting the following three paragraphs:

"4.   It is hereby ordered that the Respondents write to Mrs. George A. Walker, widow of the late Dr. George A. Walker, a formal public letter of apology for the grief she has suffered due to the refusal of the Respondents to bury the remains of her late husband in December, 1969.   Said letter must meet with the approval of the Pennsylvania Human Relations Commission.

.   .   .   .

"8.   The Respondent shall also maintain such records, in writing, as will indicate whether any person is refused burial, and the reasons thereof.   A copy of said reasons for refusal of burial should be sent both

---

[2] Alto-Reste Park Cemtery Association, since 1925, had refused to inter anyone other than Caucasians.

[3] Appellee failed, after due notice, to attend these hearings.

to the family of the person refused and to the Pennsylvania Human Relations Commission.

. . . .

"10. Respondent shall advertise in the 'Altoona Mirror' that it does not discriminate on the basis of race in the sale of all of its cemetery plots. Such advertisement shall be submitted to the Executive Director of the Pennsylvania Human Relations Commission for his approval prior to its publication. Said advertisement shall be published no less than once each week for two consecutive weeks." The propriety of these deletions form the basis of the instant appeal.

Appellant contends that the Commonwealth Court erred in striking out the above noted paragraphs from the Commission's order. Specifically, appellant argues that the Commission's actions were proper in light of the broad statutory mandate conferred upon it by the Legislature to "effectuate [through affirmative action] the purposes of the [Human Relations] Act." Pennsylvania Human Relations Act, supra at §7(e), 43 P.S. §957(e). Appellee asserts[4] that the Commission did not have subject matter jurisdiction over the present action, since cemeteries were not specifically included within the Human Relations Act's definition of "places of public accommodation" until December 10, 1970, approximately 10 months subsequent to the filing of the instant complaint.[5] Act of December 10, 1970, P. L. 882, §1, 43

[4] "That this question of jurisdiction was not raised in the court below [here, the Commonwealth Court] is of no moment for such question may be raised for the first time at the appellate level. See Patterson's Estate, 341 Pa. 177, 19 A. 2d 165 (1941) and authorities cited therein." Rybak Estate, 424 Pa. 470, 475, 227 A. 2d 883, 885-86 (1967).

[5] Appellee also contends that the Human Relations Commission is bound by a purported "stipulation" entered into between appellee and counsel for the Commission. Accordingly, appellee argues that the subsequently issued amended final order is improper, and

P.S. §954(1) (Supp. 1973). For the reasons set out below, we agree, in part, with appellant's contentions. Accordingly, the order of the Commonwealth Court is affirmed with modifications.

## I

Appellee's jurisdictional argument is not persuasive. In 1955, the Legislature provided that "[i]t shall be an unlawful discriminatory practice . . . (i) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employe of *any place of public accommodation, resort or amusement* to (1) Refuse, withhold from, or deny to any person because of his race, color, religious creed, ancestry or national origin, either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such place of public accommodation, resort or amusement." Pennsylvania Human Relations Act, supra at §5(i), 43 P.S. §955(i) (emphasis added).

The phrase "place of public accommodation", as used in the 1955 Act, was defined as ". . . *any place which is open to, accepts or solicits the patronage of the general public, including but not limited to* . . . [approximately 50 enumerated places of accommodation] but shall not include any accommodations which are in their nature distinctly private." Pennsylvania

---

hence, should not be enforced. This issue, raised by appellee (then appellant) in the Commonwealth Court, was decided adversely to it by that court. Not having taken an appeal from that decision, appellee is precluded from raising it here. See, e.g., *First Pennsylvania Banking and Trust Co. v. United States Life Insurance Co. in the City of New York*, 421 F. 2d 959 (3d Cir. 1969); *Young v. Mathews Trucking Corp.*, 383 Pa. 464, 119 A. 2d 239 (1956); *Niebalski v. Pennsylvania Railroad Co.*, 249 Pa. 530, 94 Atl. 1097 (1915). To hold otherwise would permit a non-appealing appellee to obtain a reversal on such an issue.

Human Relations Act, supra at §4(1), 43 P.S. §954(1) (Supp. 1973) (emphasis added).

In December of 1970, the Act was amended to make clear that "nonsectarian cemeteries" were specifically included as "places of public accommodation", falling within the ambit of the Act. Act of December 10, 1970, supra, 43 P.S. §954(1) (Supp. 1973). Appellee argues that since cemeteries were not categorically mentioned in §954(1), supra, until eleven months subsequent to the commencement of the present action, cemeteries were not considered to be "places of public accommodation" subject to the jurisdiction of the Commission. We cannot agree.

As Chief Justice Horace STERN stated for this Court more than eighteen years ago in *Everett v. Harron,* 380 Pa. 123, 126-27, 110 A. 2d 383, 385 (1955), when confronted with a similar argument: "Defendants contend that their establishment does not fall within the range of this statutory enactment because the section in question goes on to provide that 'A place of public accommodation, resort or amusement, within the meaning of this section shall be deemed to include' some enumerated forty-odd places but does not specifically name 'swimming pools.' *However, this does not imply that only the places thus mentioned are within the purview of the statute for the list does not purport to be exclusive of all places other than those specifically named.*" (emphasis added). See also *Sellers v. Philip's Barber Shop,* 46 N.J. 340, 344, 217 A. 2d 121, 123 (1966).

Chief Justice STERN was undeniably correct; the Act clearly states that a "place of public accommodation" *includes but is not limited to* the enumerated specific accommodations. Pennsylvania Human Relations Act, supra at §4(1), 43 P.S. §954(1) (Supp. 1973). "[T]he term 'include' is to be dealt with as a word of 'enlargement and not limitation' . . . [T]his [is] es-

pecially true where . . . it . . . [is] followed by the phrase 'but not limited to' the illustrations given." *Zahorian v. Russell Fitt Real Estate Agency*, 62 N.J. 399, 412, 301 A. 2d 754, 761 (1973) (citations omitted). Thus, it is difficult to conceive how appellee, a public cemetery, can here contend that it is not a "place of public accommodation", a ". . . place which is open to, accepts or solicits the patronage of the general public." Pennsylvania Human Relations Act, supra at §4(1), 43 P.S. §954(1) (Supp. 1973). The record here clearly supports the Commission's determination that appellee falls squarely within the broad scope of §954(1), supra.

As the New Jersey Superior Court stated in interpreting a statutory enactment similar to §954(1), supra: "The primary rule of statutory construction is to ascertain the legislative intent, and all other rules of construction are secondary thereto. Where the language is clear, there is no room for construction; such need arises only where the language of the enactment is doubtful or obscure and such as will leave reasonable minds uncertain as to its meaning. We perceive no room for construction so far as Section [954(1)] is concerned. *Its patent purpose is to extend to all persons equal rights in any places of public accommodation, resort or amusement. The word 'any' means '\* \* \* one out of many \* \* \*' and is given the full force of 'every' or 'all.'*" *State v. Rosecliff Realty Co.*, 1 N.J. Super. 94, 100, 62 A. 2d 488, 490 (1948) (emphasis added). See also *Pennsylvania Human Relations Commission v. Chester School District*, 427 Pa. 157, 166-67, 233 A. 2d 290, 295-96 (1967).

Appellee's view of §954(1), supra, is incorrect. The language of that section ("including but not limited to") is broad and all inclusive. "If it was the intent [of the Legislature] to narrow the broad scope of the

phrase 'any places of public accommodation . . .' as used in Section [955(i), supra], inept language was used for that purpose. The verb 'include' has not been defined so as to give to it such a restrictive meaning." *Rosecliff Realty Co.*, supra at 101, 62 A. 2d at 491. See *Harron*, supra. Indeed, this Court has held, as the Legislature has directed, that the provisions of the Pennsylvania Human Relations Act ". . . be construed liberally for the accomplishment of the purposes thereof." *Chester School District*, supra at 165, 233 A. 2d at 294; Pennsylvania Human Relations Act, supra at §12(a), 43 P.S. §962(a).

Appellee's final contention is that since the Legislature amended §954(1), supra, in December of 1970, to include specific reference to "nonsectarian cemeteries", prior to that time (and at the time of the instant action), cemeteries were not, in the view of the Legislature, "place[s] of public accommodation" under the Act. We do not agree.

"The fact that the Legislature immediately amended the statute so as specifically to include . . . [nonsectarian cemeteries] when the earlier language was restricted by judicial decision, shows clearly that the amendment was intended for clarification. In addition there is no canon of construction which is authority for a strict construction of the statute here in question." *Delaney v. Central Valley Golf Club, Inc.*, 289 N.Y. 577, 578, 43 N.E. 2d 716, 717 (1942). In fact, the legislatively mandated construction here, as noted above, must be to the contrary.

Thus, it is impossible to conclude that nonsectarian cemeteries were not "place[s] of public accommodation" prior to the 1970 amendments to the Pennsylvania Human Relations Act, supra. Cemeteries are of unquestionable public importance. Their operation, having a sufficiently intimate relationship with the

public interest and welfare, justifies the close regulation afforded them (cemeteries) by our Legislature. See 9 P.S. §§1 et seq. The public need for the services made available by cemeteries is irrefutably all inclusive—all of us, at one time or another, will be entrusted unto their care. All of these factors bring cemeteries squarely into the public domain and give them a special status. So long as a nonsectarian cemetery holds that status, it may not, and could not legally, as a "place of public accommodation", discriminate on the basis of ". . . race, color, religious creed, ancestry, use of guide dogs because of blindness of the user, age, sex or national origin." Pennsylvania Human Relations Act, supra at §2(a), 43 P.S. §952(a) (Supp. 1973). Cf. *Sellers,* supra.

## II

Appellant, the Human Relations Commission, argues that the Commonwealth Court erred in striking paragraphs four (4), eight (8) and ten (10), supra, of the Commission's amended final order. With this contention we agree, in part.

From the outset, we note that the Legislature, in an attempt to deal comprehensively with the basic and fundamental problem of discrimination, clothed the Human Relations Commission with authority to ". . . *take such affirmative action* including but not limited to . . . [several specific courses of action] *as, in the judgment of the Commission, will effectuate the purposes of this act, and including a requirement for report of the manner of compliance."* Pennsylvania Human Relations Act, supra at §9, 43 P.S. §959 (Supp. 1973) (emphasis added.) The words "as in the judgment of the Commission" indicate to us that the Legislature recognized that only an administrative agency with broad remedial

powers, exercising particular expertise, could cope effectively with the pervasive problem of unlawful discrimination. Accordingly, the Legislature vested in the Commission, quite properly, maximum flexibility to remedy and hopefully eradicate the "evils" of discrimination. Pennsylvania Human Relations Act, supra at §2(a), 43 P.S. §952(a) (Supp. 1973). The legislative mandate that the provisions of the Act be "construed liberally", noted supra, serves to reinforce this view.

We thus recognize that the expertise of the Commission in fashioning remedies is not to be lightly regarded. We agree completely with, and adopt as our standard of review here, the United States Supreme Court's statement in *Fireboard Paper Products Corp. v. N.L.R.B. et al.*, 379 U.S. 203, 216, 85 S. Ct. 398, 405-06 (1964) (dealing with a provision (10c) of the Taft-Hartley Act virtually identical to, in phraseology, the statutory provision (43 P.S. §959, supra) here involved) : "That section [10c] 'charges the Board with the task of devising remedies to effectuate the policies of the Act.' . . . *The Board's power is a broad discretionary one, subject to limited judicial review.* '*The relation of remedy to policy is peculiarly a matter for administrative competence*' . . . '*In fashioning remedies to undo the effects of violation of the Act, the Board must draw on enlightenment gained from experience.*' . . . *The Board's order will not be disturbed 'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.*' . . ." (emphasis added) (citations omitted). Accord, *Jackson v. Concord Co.*, 54 N.J. 113, 253 A. 2d 793 (1969); *Holland v. Edwards*, 307 N.Y. 38, 119 N.E. 2d 581 (1954).[6] See

---

[6] As Judge FULD stated for the New York Court of Appeals in *State Commission Against Discrimination v. Holland*, 307 N.Y. 38, 46, 119 N.E. 2d 581, 585 (1954) : "The Commission—as in the

also *Hayes v. Scranton,* 354 Pa. 477, 482, 47 A. 2d 798, 801 (1946).

Using this standard to determine the scope of our review, we now turn to the Commonwealth Court's holding that paragraphs four, eight and ten of the Commission's amended final order ". . . are unreasonably burdensome and arbitrary and as such are beyond the authority of the Commission." *Alto-Reste Park Cemetery Association,* supra at 210, 298 A. 2d at 623.

## III

As noted above, paragraph eight requires appellee cemetery to maintain written records indicating whether a person has been refused burial, and the reasons therefore. Additionally, paragraph eight requires Alto-Reste to send to both the family of the person refused and to the Commission a copy of ". . . said reasons for refusal of burial." In our view, the Commonwealth Court was in error in its determination that this provision was ". . . not consistent with the purposes of the act, . . ." Id.

It is beyond cavil that the Human Relations Act was intended, by the Legislature, to protect more than individuals unlawfully discriminated against—of equal importance is the Act's intent that the public generally be protected from such discrimination. Pennsylvania Human Relations Act, supra at §2(c), 43 P.S. §952(c) (Supp. 1973). Accordingly, it is, and was here, incumbent upon the Commission to not only fashion an effective remedy for the individual aggrieved, but also

---

case of other agencies under comparable statutes—'has wide discretion in its choice of a remedy deemed adequate to cope with the unlawful practices' in question, 'and the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist' . . . ." (Citations omitted).

to guard against and deter the same discriminatory action from recurring, to the detriment of others within the same class. Therefore, we find nothing improper in paragraph eight of the Commission's order.[7]

As the New Jersey Supreme Court recently stated in *Jackson*, supra at 124-25, 253 A. 2d at 799-800 (dealing with a Commission order and antidiscrimination statute virtually identical to those involved here): "From all of this it is patently clear that the Legislature intended to create an effective enforcement agency in order to eradicate the cancer of discrimination. Even in the case of an individual complaint, it is plain that the public interest is also involved. Discrimination, by its very nature, is directed against an entire class in the particular circumstances and wrongful conduct against a complaining individual is indicative of such a state of mind in the wrongdoer against the class. Common knowledge and experience dictate the conclusion, for example, that an apartment owner found to have discriminated because of race in one instance may well have discriminated, and proposes to discriminate, against all others of the class seeking to rent his accommodations. . . . So the law seeks not only to give redress to the individual who complains but moreover to eliminate and prevent all such future conduct on the part of the landlord by enjoining further discriminatory

---

[7] Although the "reporting provision" of the Commission's order does not state a durational limitation, we construe, as we must, paragraph eight to require reporting for only a "reasonable period of time." The discretion to determine a reasonable time period is properly reposed in the Commission. Pennsylvania Human Relations Act, supra at §9, 43 P.S. §959 (Supp. 1973). See, e.g., *United States v. West Peachtree Tenth Corp.*, 437 F. 2d 221, 230-31 (5th Cir. 1971) (two year reporting period); *Zahorian v. Russell Fitt Real Estate Agency*, 62 N.J. 399, 405, 301 A. 2d 754, 758 (1973) (two year reporting period); *Holland v. Edwards*, 307 N.Y. 38, 42, 119 N.E. 2d 581, 583 (1954) (one year reporting period).

practices as to all persons, as well as to deter others similarly situated from engaging or continuing to engage in such courses of conduct. . . . Posting requirements are needed to inform and protect future rental applicants, and *record inspection provisions are necessary to enable ready check of compliance with the public future aspects of a remedial order.* Efforts to remain free to discriminate or to hinder the enforcement of the law cannot be tolerated any more than attempted subtle evasions." (emphasis added). See also *Holland,* supra.

On this record, where the Commission clearly has broad remedial powers, including the authority to order a ". . . report of the manner of compliance" (Pennsylvania Human Relations Act, supra at §9, 43 P.S. §959 (Supp. 1973)), paragraph eight, requiring such reporting, may not be disturbed. "[T]he evidence adequately supported the . . . [Commission's] finding that there had been such conduct (unlawful discrimination) and the remedial steps which would be required to terminate it and to insure future compliance were matters largely within the . . . [Commission's] discretion. . . . [Its] conscientious determination that the requirements for posting and *the submission of . . . records of applicants were necessary and appropriate should not be interfered with judicially in the absence of a showing of illegality, arbitrariness or the like; here there was no such showing and accordingly the . . . [Commonwealth Court] should not have stricken . . . [its] requirements." Zahorian,* supra at 409-10, 301 A. 2d at 760 (emphasis added).[8]

----

[8] Under federal statutes comparable to the Pennsylvania Human Relations Act, the federal courts have recognized the necessity and appropriateness of record keeping provisions to insure future compliance. See, e.g., *United States v. West Peachtree Tenth Corp.,* 437 F. 2d 221 (5th Cir. 1971) ; *United States v. Real Estate Develop-*

138

## IV

Again, in the face of the legislative mandate that the Commission ". . . take such affirmative action [to end discrimination] . . . as, in the judgment of the Commission, will effectuate the purposes of this act, . . .", we cannot say that paragraph ten (requiring appellee to advertise on two occasions that it does not discriminate on the basis of race) has " '. . . no reasonable relation to the unlawful practices found to exist.' " *Holland*, supra at 46, 119 N.E. 2d at 585. In fact, where as here, the record indicates that appellee's discriminatory policies were well known to the local citizenry, "such affirmative [remedial] action" is entirely proper and consistent with the purposes of the Pennsylvania Human Relations Act.

We note further that advertising, as a vehicle to end discrimination, is not a new and novel procedure first

---

*ment Corp.*, 347 F. Supp. 776 (N.D. Miss. 1972). Indeed, the decree issued in *West Peachtree Tenth Corp.*, supra at 230-31, has been described (in *Real Estate Development Corp.*, supra at 785) as a "model decree."

"It is further ordered that ninety days after the entry of this decree, and at three-month intervals thereafter, for a period of two years following the entry of this decree, the defendants shall file with this Court, and serve on counsel for the plaintiff, a report containing the following information for the One Tenth Street Apartments:

"(a) The name, address and race of each person making inquiry about the availability or terms of rental of an apartment during the preceding three-month period, and whether such person:

"1. Made inquiry.

. . .

"3. Filled out an application.

. . .

"8. Was accepted for occupancy.

"9. Was rejected, and if rejected, the reason or reasons therefor, and the specific objective criterion which the applicant failed to meet."

adopted by the Commission. See, e.g., *Smith v. Young Men's Christian Ass'n of Montgomery*, 462 F. 2d 634, 649 (5th Cir. 1972) ; *United States v. Sheet Metal Workers*, 416 F. 2d 123 (8th Cir. 1969).

## V

As to paragraph four (requiring appellee to write a public letter of apology to the widow of the late Dr. George Walker), we agree with the Commonwealth Court's determination that it should be stricken. The record reveals that appellee has, in fact, written a private letter of apology to Mrs. Walker—this letter has not been published by her, by the appellee or by the Commission. When paragraph four is viewed in conjunction with the Commission's order that appellee advertise that it does not discriminate on the basis of race (and in view of the private letter already sent to Mrs. Walker), it must be concluded that it (paragraph four) is an ". . . attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act. . . ." *Fireboard Paper Products Corp.*, supra at 216, 85 S. Ct. at 405-06.

The Commission's action in imposing the advertising requirement of paragraph eight amply serves the purpose of informing the public that Alto-Reste Park Cemetery Association no longer adheres to its "all-Caucasian" policies. A public letter of apology here would serve no appropriate additional purpose.

## VI

Accordingly, paragraphs eight and ten of the Commission's amended final order are reinstated. So modified, the order of the Commonwealth Court is affirmed.

Mr. Justice O'BRIEN concurs in the result.

CONCURRING OPINION BY MR. JUSTICE POMEROY:

While I join in the opinion of the Court, I wish to express at the same time my complete agreement with the sentiments expressed by Mr. Justice EAGEN in his dissenting opinion. As I have had occasion to observe before, the ability to place reliance on the word of a fellow lawyer is a highly prized and important aspect of the administration of justice in this country. See *Fox v. Mellon*, 438 Pa. 364, 367, 264 A. 2d 623 (1970) (dissenting opinion of Mr. Justice POMEROY). This is particularly true when the fellow lawyer is representing the government. The problem here, however, is that the appellee cemetery, satisfied to live with the decision of the Commonwealth Court, took no cross-appeal from that court's adverse holding as to the alleged breach of the settlement agreement. Not having done so, it is not entitled now, as appellee, to a reversal on that ground.

As to the remedy ordered by the Commission, I add my thought that the Commission, an agency of democratic government, is without power to order the giving of a public apology. An apology is a communication of the emotion of remorse for one's past acts. To order up that particular emotion, or any other emotion, is beyond the reach of any government; to assert the contrary is to advocate tyranny. If, perchance, the Commission, in ordering a public manifestation of remorse, should be indifferent as to whether remorse in fact exists but instead should desire only the outward act, then it would be either extracting a lie from those willing to lie ("I'm sorry", but I'm really not) or asking the courts of this State to hold in contempt those who will not lie ("I'm not sorry and I will not say that I am"). Given the choice, I would rather hold in contempt the former, not the latter. But in my view the Commission should eschew purporting to order the expression of an

emotion, whether or not the emotion is in fact entertained by the one so ordered.

---

DISSENTING OPINION BY MR. JUSTICE EAGEN:

I would agree with the opinion and order of the majority, if the following undisputed facts did not appear in the record.

After the Pennsylvania Human Relations Commission entered its first "final order" in the case on April 27, 1970, the Association entered an appeal therefrom in the Commonwealth Court. Negotiations followed between counsel for the Commission and counsel for the Association resulting in an agreement that the Commission's order would be modified in certain respects. Relying on this agreement, the Association discontinued its appeal. On *July 28, 1970,* counsel for the Commission confirmed the settlement agreement by writing counsel for the Association wherein he stated, "The Pennsylvania Human Relations Commission hereby agrees to the entry of the stipulation" [which included the order of the Commission with the agreed to modifications] and suggesting that the "stipulation" be entered as part of the record in the Commonwealth Court.

Following the above, the personnel of the Commission changed substantially. Counsel was also replaced. On *March 21, 1972,* the new counsel for the Commission wrote counsel for the Association informing him that on May 20th, the Commission entered an "amended final order" which was "substantially identical" with its "final order" of April 27, 1970. The latter also stated former counsel for the Commission was not authorized to agree to any modifications of the Commission's order of April 27, 1970.

It appears incredible to me that the Commission, as constituted in 1970, was not fully cognizant of the settlement agreement entered into by its counsel. But

even assuming this to be so, and also recognizing the limitations on the power of counsel generally to settle a client's cause, I would not permit the Commission to renege on its counsel's agreement instantly, particularly in view of its delay in disavowing the agreement.

It should be noted the Commission waited many, many months before attempting to counteract its counsel's action in settling the dispute. Moreover, counsel for the Commission is an assistant attorney general of the Commonwealth and the attorney general is vested with broad power in compromising litigation on the part of the Commonwealth. Finally, and probably most important, when a citizen is dealing with government through one of its representatives, particularly the attorney general or one of his assistants, he should be entitled to rely on that individual's word. Simple honesty and fairness permit no less.

I dissent!

Mr. Chief Justice JONES joins in this dissenting opinion.