410 A.2d 1246

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Appellant,**

v.

**MARS COMMUNITY BOYS BASEBALL ASSOCIATION, Thomas McKeon, President.**

Supreme Court of Pennsylvania.

Submitted Sept. 26, 1979.

Decided Feb. 6, 1980.

Robert S. Mirin, Gen. Counsel, Pa. Human Relations Commission, Harrisburg, for appellant.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## ORDER

PER CURIAM:

The Court, being equally divided, the order of the Commonwealth Court is affirmed.

MANDERINO, J., did not participate in the decision of this case.

NIX, J., filed an opinion in support of affirmance.

LARSEN, J., filed an opinion in support of affirmance in which FLAHERTY, J., joins.

ROBERTS, J., filed an opinion in support of reversal in which EAGEN, C. J., and O'BRIEN, J., join.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Justice.

During April and May 1975, the mothers of Natalie Thunell and Lisa Arture filed complaints with the Pennsylvania Human Relations Commission. These complaints alleged that the Mars Community Boys Baseball Association (Mars) had violated the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 951 *et seq.* (Act), by refusing to allow their daughters to participate in the association solely on the basis of their sex. After an investigation, attempts at conciliation, and a public hearing, the Commission concluded that Mars maintained sex-segregated admissions, policies, and practices in violation of Section 3 and Section 5(i)(1) of that Act. On October 5, 1977, the Commission entered a final order and decree directing Mars to cease and desist its sex-based restrictive admission practices.

Mars failed to obey the Commissions' order and the Commission applied to the Commonwealth Court for an enforcement order pursuant to 43 P.S. § 960. The Commonwealth Court correctly recognized that at the time of the lawsuit, the Commission's jurisdiction under Section 5(i)(1) was limited to remedying unlawful discrimination in places of public accommodation on the basis of "race, color, religious creed, ancestry, or national origin."[1] Since Section 5(i)(1) did not include the word "sex," the Commonwealth Court held that the Commission acted beyond its statutorily prescribed jurisdiction.

It is a fundamental precept of administrative law that an agency only has those powers which the legislature had delegated to it. Davis, *Administrative Law* §§ 2.01–2.19 (1972). We have consistently recognized that an administrative agency's authority must be conferred by legislative language, clear and unmistakable, and that the agency must act within the exact limits defined. *Pa. Human Relations Commission v. St. Joe Minerals Corp.*, 476 Pa. 302, 382 A.2d 731 (1978); *Volunteer Firemen's Relief Ass'n. v. Minehart*, 425 Pa. 82, 227 A.2d 632 (1967); *Green v. Milk Control Commission*, 340 Pa. 1, 16 A.2d 9 (1940). The legislature has given the Human Relations Commission broad powers to effectuate its purpose of eliminating unlawful discriminatory practices. But under the pretext of attaining that purpose, the Commission may not ignore the letter of the statute concerning the agency's scope of power, *Pa. Human Relations Commission v. St. Joe Minerals Corp., supra*; see also *Philadelphia v. Human Relations Commission*, 4 Pa. Cmwlth. 506, 287 A.2d 703 (1972); and delve into areas of discrimination that the legislature has withheld from the Commission's jurisdiction.

1. The question as to the propriety of the Commission's decision to purport to act pursuant to this portion of the Act was not addressed by the Commonwealth Court. I, therefore, express no view as to whether a baseball association falls within the statutory definition of a "place of public accommodation, resort or amusement." Section 4, 43 P.S. § 954.

The Opinion in Support of Reversal wrongly concludes that Section 5(i)(1) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, 43 P.S. § 953 (1964), as written prior to amendments in 1978, provided the Human Relations Commission with jurisdiction over appellant's complaint that appellee engaged in unlawful discriminatory practices by preventing young girls from participating in appellee's baseball league. Their opinion concedes that prior to the amendments contained in the Act of November 26, 1978, P.L. 292, No. 309, § 1, effective January 25, 1979, Section 5(i)(1) did not bar discrimination on the basis of sex regarding places of public accommodation, resort or amusement. At 1246–1247.

The Opinion in Support of Reversal glosses over this crucial statutory failure by citation to other sections in the Act concerning gender based discrimination. These other sections, unlike section 5(i)(1), are not determinative of the Commission's jurisdiction. The Act gives the Commission the power and the duty "[t]o initiate, receive, investigate and pass upon complaints charging *unlawful discriminatory practices.*" § 7(f), 43 P.S. § 957(f) (emphasis added). Section 5 contains the Act's list of unlawful discriminatory practices with which the Commission should be concerned.

Unlawful discriminatory practices

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

\* \* \* \* \* \*

(i) For any person being the owner lessee, proprietor, manager, superintendent, agent or employe of any place of public accommodation, resort or amusement to

(1) Refuse, withhold from, or deny to any person because of his race, color, religious creed, ancestry or national origin, either directly or indirectly, any of the accommo-

dations, advantages, facilities or privileges of such place of public accommodation, resort or amusement.[2]

A fair reading of Sections 5 and 7 reveals the manifest intent of the legislature to limit the Commission's jurisdiction to those areas of statutorily defined unlawful discriminatory practices contained in Section 5. Because Section 5(i)(1) did not list gender discrimination in places of public accommodation, resort or amusement until 1978, the Commonwealth Court correctly held that the Commission lacked jurisdiction over the present complaint. In reaching that result, the Commonwealth Court reasoned:

Although we are mindful of the legislative directive to construe liberally the provisions of the Act for the accomplishment of the purposes thereof, 43 P.S. § 962(a), we cannot rewrite the Act by the addition of words which the legislature may well have omitted by design and intent, rather than mere oversight. This is especially so where the section under consideration has been amended on several occasions without the alleged missing word being inserted. Our role is to interpret and not legislate.

It is clear that "we may not, under the rubric of statutory interpretation, add to legislation matter conspicuously absent therefrom." *In Re Shapp*, 476 Pa. 480, 484, 383 A.2d 201, 203 (1978).

Furthermore, the pattern by which the legislature amended Section 5 to bar gender discrimination contradicts the Opinion in Support of Reversal's conclusion that gender discrimination was intended to be encompassed in Section (i)(1) prior to 1978. Section 5 lists broad areas of unlawful discriminatory practices: employment, labor organizations membership, housing, and public accommodations, resorts, and amusements. In 1969, the legislature chose only to amend the employment, union, and housing provisions of Section 5 by adding gender as a prohibited classification. Act of July 9, 1969, P.L. 133, § 2. It is inconceivable that the nine year legislative delay in adding gender discrimina-

2. The 1978 amendment added the word "sex" between the words "color" and "religious creed" in subsection (i)(1).

tion to Section 5(i)(1) was the result of inadvertence or mistake.

It is important to realize that, although our State constitution was amended in 1971 by the adoption of the Equal Rights Amendment, Pa. Const., Art. I, § 28, the legislature did not enact implementing legislation until the Act of October 4, 1978, P.L. 909, No. 173, § 1, 1 Pa.C.S.A. § 2301 (1979 Pamphlet). Even after this implementing legislation, the legislature felt compelled to amend Section 5(i)(1) the next month by adding gender discrimination to its list of unlawful discriminatory practices. The Opinion in Support of Reversal can offer no reasonable basis consistent with the Act's history to support the conclusion that prior to 1978 the legislature intended Section 5(i)(1) to include gender discrimination. Moreover, this interpretation is further undermined by the legislature's subsequent actions. Had this been the case, there would not have been any need for the legislature to amend Section 5(i)(1) in 1978 to include the word "sex".

In conclusion the only issue presented in this case was whether the Pennsylvania Human Relations Commission had jurisdiction to eliminate gender-based discrimination in public accommodations, resorts and amusements prior to the 1978 amendment. In other contexts, we have held that the Commission has acted beyond its scope of authority and this case is analogous to those cases. *See e. g., Pa. Human Relations Commission v. Zamantakis*, 478 Pa. 454, 387 A.2d 70 (1978) (no power to award damages for mental anguish); *Pa. Human Relations Commission v. St. Joe Minerals Corp.*, 476 Pa. 302, 382 A.2d 731 (1978) (no power to issue interrogatories).

In no way is this opinion intended to condone gender-based discrimination in public accommodations, either now or before the 1978 amendment. I merely wish to point out that prior to 1978 the legislature did not delegate to the Commission the power to remedy this type of discrimination. Regardless of my personal views on this subject, it is nevertheless, my sworn duty to interpret legislative enactments in accordance with the clear legislative intent.

## OPINION IN SUPPORT OF AFFIRMANCE

LARSEN, Justice.

The Opinion in Support of Reversal would have this Court enter the business of legislating. At the time in question (1975), the Pennsylvania Human Relations Act Section 5(i)(1) specifically did not include sex discrimination as one of the enumerated types of discrimination which was within the exclusive jurisdiction of the Human Relations Commission. In 1978, the Pennsylvania Legislature amended the aforesaid section to include sex discrimination. The Opinion in Support of Reversal would make a further "legislative amendment" by interpreting Section 5(i)(1) to include sex discrimination even before the 1978 legislature amendment.

One may want, in fairness, to achieve a certain end result; but in the process, the integrity of the legislature should be observed by the judiciary. I vote, therefore, to affirm the Commonwealth Court's decision.

FLAHERTY, J., joins in this opinion in support of affirmance.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

It is regrettable that in 1980 a majority of this Court is unwilling to acknowledge that sex discrimination has for many years not only been condemned, but also prohibited by every level of our government—local, state and federal alike. As a sad result a decree of the Pennsylvania Human Relations Commission directing appellee to "cease and desist" its discrimination against females, by denying to females the same athletic privileges and opportunities afforded males in places of public accommodation, remains unenforced. Ironically, this unjustified result disregards the objective of the Commonwealth's remedial legislation designed to strike down the many forms of discrimination. In my view, the Commission's "cease and desist" order was eminently proper and should be sustained.

The Pennsylvania Human Relations Act grants the Pennsylvania Human Relations Commission exclusive jurisdiction to remedy "unlawful discriminatory practices." [1] Under section 5(i)(1), it is an unlawful practice to:

"Refuse, withhold from, or deny to any person because of his race, color, sex, religious creed, ancestry, national origin or handicap or disability, or to any person due to use of a guide dog because of the blindness of the user, either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such place of public accommodation, resort or amusement."

Even though, since 1969, section 3 of the Act has expressly provided that the right to enjoy places of public accommodation, resort or amusement free of sex discrimination is an enforceable civil right, sex discrimination was not specifically listed as an unlawful discriminatory practice in section 5(i)(1) until 1978. The issue presented is whether the Commission had jurisdiction prior to the 1978 amendment to remedy unlawful sex discrimination in a place of public accommodation, resort or amusement. The Commonwealth Court held that the Commission did not have jurisdiction. I would hold as a matter of statutory construction and public policy that the Commission did have jurisdiction.

During April and May of 1975, complaints were filed with the Pennsylvania Human Relations Commission by two mothers, Carol B. Craig and Kathleen L. Arture, on behalf of their minor daughters Natalie Thunell and Lisa Arture. The complainants alleged that the Mars Community Boys Baseball Association (Mars) had violated sections 3 and 5(i)(1) of the Human Relations Act by denying the girls membership in the association on the basis of sex.[2] The Commission conducted an investigation of the complaints, determined that probable cause existed for crediting the

1. Act of October 27, 1955, P.L. 744, as amended, 43 P.S. § 953 (Supp. 1978–79).

2. *Id.,* 43 P.S. §§ 953, 955 (Supp. 1978–79).

allegations, and attempted to eliminate the discriminatory practices by conference, conciliation and persuasion. When these endeavors proved fruitless, the Commission convened a public hearing.

The hearing panel found that Mars maintained sex-segregated admission policies and practices in violation of sections 3 and 5(i)(1) of the Act. The Commission, adopting the panel's findings and recommendations, entered a final order and decree directing Mars to cease and desist from denying females membership and participation in the league. When Mars did not comply with this order, the Commission applied to the Commonwealth Court for enforcement pursuant to section 10 of the Act.[3] In a memorandum opinion, the Commonwealth Court denied the application for an order of enforcement, and set aside the Commission's order and decree.[4]

Section 12 of the Act states that the provisions of the Act are to be liberally construed, so as to accomplish the statutory purpose.[5] In *PHRC v. Chester School District*, 427 Pa. 157, 233 A.2d 290 (1967), this Court stated that ascertainment of the statutory purpose "compels consideration of more than the statute's literal words." I agree with the Commission that, even prior to the 1978 amendment to section 5(i)(1) of the Act, the Legislature intended that the Commission exercise jurisdiction over sex discrimination in places of public accommodation, resort or amusement. Section 2 of the Act which declares the public policy of the Commonwealth with respect to discrimination provides:

3. *Id.*, 43 P.S. § 960.

4. The appellee, Mars Boys Baseball Association, did not submit a brief on appeal to this Court.

   The Commonwealth Court did not address the issue of whether the Commission correctly concluded that a boys baseball association is a "place of public accommodation, resort or amusement" within the meaning of § 4 of the Act, 43 P.S. § 954, nor do we. The only issue before us is whether the Commission had jurisdiction over sex discrimination under § 5(i)(1) of the Act.

5. *Id.*, 43 P.S. § 962(a).

"(a) The practice or policy of discrimination against individuals or groups by reason of their race, color, religious creed, ancestry, handicap or disability, use of guide dogs because of blindness of the user, age, sex or national origin is a matter of concern to the Commonwealth. . . .

(b) It is hereby declared to be the public policy of this Commonwealth . . . to assure equal opportunities to all individuals and to safeguard their rights at places of public accommodation and to secure commercial housing regardless of race, color, religious creed, ancestry, sex, handicap or disability, use of guide dog because of blindness of the user or national origin." [6]

Like section 3, this provision referred to sex discrimination prior to the 1978 amendments and at the time the alleged violation occurred. As noted above, section 3 provides that the opportunity to obtain the advantages of places of public accommodation, resort or amusement free from discrimination on the basis of sex is a cognizable civil right which is enforceable by the Commission. It is inconceivable that the Legislature intended to create a right enforceable by the Commission without concurrently providing the Commission a mechanism for enforcing it. This is particularly true where "[t]he Legislature has chosen, in the PHRA, to charge an administrative agency with the jurisdiction initially to receive, investigate, conciliate, hear and decide complaints alleging unlawful discrimination. When the statutory procedure is invoked, it is exclusive." *PHRC v. Feeser*, 469 Pa. 173, 178, 364 A.2d 1324, 1326 (1976) (footnotes omitted).

Even if sections 2 and 3 are not dispositive, the recent amendment of the Act to include the word "sex" in section 5(i)(1) leaves no question that the Commission had jurisdiction in this case. This Court, in *Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery Association*, 453 Pa. 124, 132, 306 A.2d 881, 886 (1973), held that "the fact that the Legislature immediately amended the statute . .

6. *Id.*, 43 P.S. § 952.

when the earlier language was restricted by judicial decision, shows clearly that the amendment was intended for clarification" (quoting *Delany v. Central Valley Golf Club, Inc.,* 289 N.Y. 577, 578, 43 N.E.2d 716, 717 (1942)). Here, the statute was amended subsequent to the decision of the Commonwealth Court.

In *Alto-Reste,* this Court found Commission jurisdiction over nonsectarian cemeteries although cemeteries were not included in the Act's enumeration of places of public accommodation until amendment prior to this Court's decision. There the result was strongly influenced by the Court's recognition that cemeteries are of "unquestionable public importance."[7] The public interest in eradicating sex discrimination, as evidenced by the legislative declaration of public policy in section 2 of the Act, supra, and by the Equal Rights Amendment to the Pennsylvania Constitution, compels a similar result here. See also *PHRC v. Chester School District,* supra.

Failure to enforce the Commission's "cease and desist" decree is particularly distressing in light of this Court's very recent case law reflecting the public policy of the Commonwealth to prohibit sex discrimination. See e. g., *George v. George,* 487 Pa. 133, 409 A.2d 1 (1979); *Commonwealth ex rel. Stein v. Stein,* 487 Pa. 1, 406 A.2d 1381 (1979). One can only hope that today's unwarranted departure will not again occur. Nor that it will deter in any way the proper utilization and vigorous enforcement of the Commonwealth's anti-discrimination machinery and efforts to halt all forms of discrimination.

The decree of the Commission is the proper and lawful response to the sex discrimination established by this record and should be enforced.

EAGEN, C. J., and O'BRIEN, J., join this opinion.

7. 453 Pa. at 132, 306 A.2d 886.