915 A.2d 1155

**James J. McGRORY, Appellee,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Bureau of Driver Licensing, Appellant.**

Supreme Court of Pennsylvania.

Argued April 4, 2006.

Decided Feb. 20, 2007.

Timothy P. Wile, Esq., Harold Cramer, Esq., Terrance M. Edwards, Esq., Harrisburg, for Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing.

John Joseph Warenda, Jr., Esq., Morrisville, for James McGrory.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Justice CASTILLE.

This appeal presents the narrow issue of whether appellant, the Department of Transportation (PennDOT), had independent authority under the Ignition Interlock Law, 42 Pa.C.S. § 7003 (since repealed), to enforce the ignition interlock requirement on drivers convicted of a second or subsequent offense of driving under the influence (DUI) in instances

where the trial court failed to impose the interlock requirement in its sentencing order.[1] The Commonwealth Court panel below followed a series of decisions from that court, heretofore not reviewed by this Court, which determined that PennDOT lacked independent authority to enforce the interlock requirement under the Interlock Law in effect at the time of appellee's DUI conviction. For the reasons that follow, we disagree, and therefore we reverse.

On June 28, 2002, appellee was convicted in the Court of Common Pleas of Bucks County of DUI in violation of former 75 Pa.C.S. § 3731(a)(1) and (a)(4), his ninth such conviction.[2, 3] The trial court sentenced appellee to time served but did not order that appellee install approved ignition interlock devices on his vehicles, as was required by the former Ignition Interlock Law, which directs trial courts to impose the requirement upon the defendant's conviction of a second or subsequent DUI offense:

1. The question presented in this appeal is incapable of future repetition, given that the General Assembly has repealed the former law and replaced it with legislation explicitly delegating to PennDOT the authority to impose the interlock requirement. *See* 75 Pa.C.S. § 3805(b) (effective February 1, 2004). Nonetheless, the resolution of this appeal affects a number of appeals, decided under the former law, which are currently pending before this Court.

2. Appellee was convicted seven prior times for DUI from 1980 through 1993. In addition, upon his first arrest in 1978, appellee was accepted in the Accelerated Rehabilitative Disposition (ARD) program. Pursuant to 42 Pa.C.S. § 7002(c), this acceptance of ARD constituted a first conviction. Thus, appellee had eight DUI convictions prior to the instant offense. The Commonwealth Court erroneously stated in its opinion that the 2002 conviction at issue involves appellee's eighth DUI conviction.

3. The version of Section 3731 in effect at the time of appellee's ninth arrest on February 28, 2002, provided in pertinent part:

   (a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of a vehicle in any of the following circumstances:
   (1) While under the influence of alcohol to a degree which renders the person incapable of safe driving.
   * * *
   (4) While the amount of alcohol by weight in the blood of:
   (i) an adult is 0.10 or greater; or
   (ii) a minor is 0.02 or greater.

**(b) Second or subsequent offense.**—In addition to any other requirements imposed by the court, where a person has been convicted of a second or subsequent violation of 75 Pa.C.S. § 3731, the court **shall** order the installation of an approved ignition interlock device on each motor vehicle owned by the person to be effective upon the restoration of operating privileges by the department. A record shall be submitted to the department when the court has ordered the installation of an approved interlock ignition device. Before the department may restore such person's operating privilege, the department must receive a certification from the court that the ignition interlock system has been installed.

42 Pa.C.S. § 7002(b) (emphasis supplied). The Bucks County Clerk of Courts certified appellee's June 28, 2002, conviction to PennDOT on July 11, 2002.

Thereafter, on July 29, 2002, PennDOT notified appellee by mail that his driving privileges were suspended for one year effective December 27, 2003. The notification informed appellee that, at the conclusion of his suspension, he must satisfy the requirements of the Interlock Law prior to restoration of his operating privilege or face an additional year of suspension:

*IGNITION INTERLOCK*

Before your driving privileges can be restored you are required by law to have all vehicle(s) owned by you to be equipped with an Ignition Interlock System. This is a result of your conviction for Driving Under the Influence. If you fail to comply with this requirement, your driving privilege will remain suspended for an additional year. You will receive more information regarding this requirement approximately 30 days before your eligibility date.

On August 21, 2002, appellee filed a statutory appeal from the suspension notice in the Bucks County Court of Common Pleas, challenging only the requirement that he install ignition interlock devices on his vehicles as a precondition to restoration of his driving privileges. Senior Judge Ward Clark held a

*de novo* hearing on November 26, 2002, at which appellee argued that PennDOT lacked authority under the Interlock Law to impose the interlock requirement absent a court order. Because the trial court failed to order that appellee comply with the Interlock Law, appellee argued, PennDOT could not enforce the requirement independently. Citing to the Commonwealth Court's decision in *Schneider v. Department of Transportation, Bureau of Driver Licensing,* 790 A.2d 363 (Pa.Cmwlth.2002), *appeal granted,* 577 Pa. 674, 842 A.2d 408 (2004),[4] where that court held that PennDOT lacked authority to enforce the interlock requirement absent a court order, the trial court summarily sustained appellee's statutory appeal.

PennDOT appealed to the Commonwealth Court, arguing that it had an independent mandate to enforce the interlock requirement upon repeat DUI offenders irrespective of whether the trial court ordered installation of such a device at DUI sentencing. PennDOT acknowledged that the *Schneider* decision supported the trial court's ruling, but argued that the facts of this case, particularly the fact that this was appellee's ninth DUI conviction, warranted reconsideration of the determination. The Commonwealth Court panel, in a published opinion, noted that Section 7002(b) mandated that the trial court order appellee to install interlock devices on his vehicles as a condition of the restoration of his operating privileges. *McGrory v. Commonwealth of Pennsylvania, Department of Transportation,* 828 A.2d 506 (Pa.Cmwlth.2003). Since the requirement of Section 7002(b) was unequivocal, the panel noted that it was "at a total loss as to the rationale of the trial court in the DUI proceedings for its failure to order installation of the ignition interlock system in accordance with Section 7002(b) upon a driver convicted eight [sic] times of driving under the influence of alcohol or controlled substance." *Id.* at 509. Nevertheless, the court noted that it was constrained to follow its decisions in *Schneider, Turner v. Department of Transportation,* 805 A.2d 671 (Pa.Cmwlth.2002) (following *Schneider*), and *Watterson v. Department of Transportation,*

---

4. The appeal in *Schneider* was discontinued before a decision was rendered due to the death of Schneider.

816 A.2d 1225 (Pa.Cmwlth.2003) (same). Thus, the court held that PennDOT had no independent authority to enforce the ignition interlock requirement.

This Court granted review of the question of whether, in light of our decision in *Commonwealth v. Mockaitis,* 575 Pa. 5, 834 A.2d 488 (2003), PennDOT had independent authority to enforce the interlock requirement, where the trial court failed to do so. As this inquiry involves a pure question of law regarding the proper interpretation of the Ignition Interlock Law, our review is plenary and non-deferential. *E.g., MCI WorldCom, Inc. v. Pennsylvania Public Utility Comm'n,* 577 Pa. 294, 844 A.2d 1239 (2004); *Mosaica Academy Charter School v. Commonwealth, Department of Education,* 572 Pa. 191, 813 A.2d 813 (2002). As in all matters involving statutory interpretation, we follow the dictates of the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.,* which provide that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. §§ 1903(a), 1921(b). The statute's plain language generally provides the best indication of legislative intent. *See, e.g., Commonwealth v. Gilmour Manufacturing Co.,* 573 Pa. 143, 822 A.2d 676, 679 (2003); *Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002) (citations omitted); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). We will resort to other considerations to discern legislative intent only when the words of the statute are not explicit. 1 Pa.C.S. § 1921(c). *See also Canvass of Absentee Ballots of November 4, 2003 General Election,* 577 Pa. 231, 843 A.2d 1223, 1230 (2004) (citing *O'Rourke v. Commonwealth, Dep't of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001)); *Ramich v. Workers' Compensation Appeal Bd. (Schatz Electric, Inc.),* 564 Pa.656, 770 A.2d 318, 322 (2001).

PennDOT, as appellant, focuses our attention on the version of former Section 7003(2) of the Interlock Law in effect at the time of appellee's sentencing and subsequent notification by

PennDOT that he would be required to install interlock devices on his vehicles as a condition of restoring his driving privileges.[5] Section 7003, which addressed "additional driver's license restoration requirements," provided in pertinent part:

In addition to any other requirements established for the restoration of a person's operating privileges under 75 Pa.C.S. § 1548 (relating to requirements for driving under influence offenders):

✳    *    *    *    *    *

(2) A person seeking restoration of operating privileges shall apply to the department for an ignition interlock restricted license under 75 Pa.C.S. § 1951(d) (relating to driver's license and learner's permit) which will be clearly marked to restrict the person to operating only motor vehicles equipped with an approved interlock ignition system.

*Id.* According to PennDOT, because a person seeking restoration of his operating privileges was required under Section 7003(2) to apply to PennDOT for an ignition interlock restricted license, it follows that, with or without a court order requiring the driver to comply with the Interlock Law, the driver cannot lawfully operate a motor vehicle without such a device. Therefore, PennDOT argues, it necessarily falls within PennDOT's authority to require the installation of the device(s) as a condition of license restoration.

PennDOT finds support for this argument in *Mockaitis, supra,* where this Court, in discussing the impact of our determination to strike and sever certain provisions of the Interlock Law which were found to be unconstitutional, opined that the Law was still viable:

[S]evering those portions of Act 63 which effectuate the delegation to the sentencing court of the license restoration-related executive responsibilities of ordering installation of the devices and certifying that they have been installed does

5. Section 7003 was repealed effective February 1, 2004. The substantive requirements of Section 7003(2) may now be found at 75 Pa.C.S. § 3805(b).

not render the remainder of the statute incapable of execution in accordance with legislative intent.... With these provisions severed, the legislation still requires recidivist DUI offenders seeking restoration of driving privileges to apply to the Department for an ignition interlock restricted license. 42 Pa.C.S. § 7003(2). The Act also precludes the offender in possession of such a restricted license from operating any motor vehicle on a highway in the Commonwealth unless that vehicle is equipped with an approved ignition interlock system. *Id.* § 7003(3). The Act thus still prevents recidivist DUI offenders from lawfully operating motor vehicles on the highways in Pennsylvania unless they have an approved limited license and are driving a properly-equipped vehicle.

*Mockaitis*, 834 A.2d at 502–503. PennDOT notes that the requirements of Section 7003(2) are not tied to, or made contingent upon, the existence of a court order requiring the installation of an interlock device. Further, the Commonwealth Court has construed *Mockaitis* to require that repeat DUI offenders must apply for and be issued interlock restricted licenses when they apply for restoration of operating privileges. *See Cinquina v. Department of Transportation,* 840 A.2d 525 (Pa.Cmwlth.2004) (recognizing that, after *Mockaitis,* PennDOT had independent authority to require drivers to apply for and be issued interlock restricted licenses); *Conrad v. Department of Transportation,* 856 A.2d 199 (Pa. Cmwlth.2004) (same); *Delaney v. Department of Transportation,* 849 A.2d 300 (Pa.Cmwlth.2004) (same); *Mankin v. Department of Transportation,* 845 A.2d 249 (Pa.Cmwlth.2004) (same); *McDonald v. Department of Transportation,* 845 A.2d 221 (Pa.Cmwlth.2004) (same).

Finally, PennDOT concludes that, even if this Court were to determine that PennDOT had no independent authority to seek to enforce the ignition interlock requirement absent a court order, appellee was still required by Section 7003(2) to apply for and be issued an interlock restricted license before he could operate a motor vehicle. Thus, even if PennDOT's anticipatory notice to appellee was deemed invalid, PennDOT

argues, appellee was required to obtain an interlock restricted license in order for his operating privileges to be restored.

Appellee responds by emphasizing that, as this case has progressed through the court system, the legal landscape has changed due to *Mockaitis* and its progeny. Appellee contends that the provisions of the Interlock Law which were struck down and severed by *Mockaitis* included the provisions that required a driver to install an interlock device, and those provisions formed the sole predicate for PennDOT's authority to issue an interlock restricted license. Absent those provisions, appellee posits, a recidivist DUI offender cannot be required to install such a device because there is no explicit authority for any entity to order installation. Thus, the predicate conditions for the necessity for an interlock restricted license did not exist following *Mockaitis*. Appellee notes that the Interlock Law has since been amended and perhaps cured of its substantive defects. However, he argues that it is not this Court's role to achieve a particular result to control one particular recidivist offender, but rather this Court's role is to declare the original version of the Interlock Law to be so flawed as to be incapable of proper application.

This Court's task is to determine the relationship between Section 7003(2) and *Mockaitis* to achieve a reasonable reading of the statute as it was affected by the severance of the provisions excising the trial courts' delegated executive role in the imposition of the interlock requirement. As Penn-DOT argues, the plain language of Section 7003(2) clearly dictates that a person subject to the Interlock Law must apply to PennDOT for an interlock restricted license as a condition of the restoration of his driving privileges, or suffer a further term of license suspension. The question then becomes whether, as PennDOT urges, that requirement necessarily assumes authority in PennDOT to enforce the interlock requirement or whether, as appellee claims, the predicate authority for imposing the interlock requirement ceased to exist when this Court decided *Mockaitis*.

Our General Assembly has established certain presumptions to guide the courts in interpreting statutory enactments, including presumptions that the legislature "does not intend a result that is absurd, impossible of execution or unreasonable" and "intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922. In accordance with Section 1922, we will not interpret a statute in such a way as to render it meaningless. *See, e.g., Allegheny County Sportsmen's League v. Rendell,* 580 Pa. 149, 860 A.2d 10 (2004); *In re Canvass of Absentee Ballots,* 577 Pa. 231, 843 A.2d 1223. Any interpretation of Section 7003 is necessarily complicated by the fact that this Court struck and severed the provisions in the prior Interlock Law requiring the trial courts to order installation of ignition interlock devices when sentencing DUI offenders. Nonetheless, the imperative to retain a viable statutory scheme where possible remains and, as we expressly indicated in *Mockaitis,* the Interlock Law can be fairly and reasonably read to effectuate the legislative intention without the provisions which were severed..

PennDOT's interpretation of Section 7003(2) as providing the agency with a separate means of enforcing the interlock requirement in the wake of *Mockaitis* is consistent with the obvious purpose and intent of the legislation. The General Assembly plainly intended that individuals whose licenses are suspended because of a second or subsequent DUI conviction must install interlock devices in their vehicles prior to the restoration of their operating privileges. In addition to mandating that trial courts impose the interlock requirement at the time of DUI sentencing (well in advance of any application for license restoration), the legislation also provided a failsafe mechanism for ensuring compliance under Section 7003(2). Section 7003(2) thus directed that a driver who would have his driving privileges restored at the conclusion of his license suspension must apply to PennDOT for an interlock restricted license. These dual provisions were designed to maximize the chances that the purpose of the legislation would be furthered—that is, that habitual DUI offenders would not be able to start and drive their cars without first demonstrating,

through use of the interlock device, that they were not intoxicated. This Court recognized the importance of this legislative goal in *Mockaitis:*

> In finding [the Interlock Law's] delegation of this executive responsibility to the courts unconstitutional under the separation of powers doctrine, we do not question the wisdom and necessity for reasonable measures to ensure that recidivist alcohol-impaired drivers do not take to the streets. Nor do we question the wisdom of legislation requiring that recidivist DUI offenders be issued restricted licenses requiring them to operate only motor vehicles equipped with Department-approved ignition interlock systems.

*Mockaitis,* 834 A.2d at 501. With this salutary legislative goal in mind, we expressly held that the Interlock Law was still viable, even with the trial courts' involvement severed from the law: "[S]evering those portions of Act 63 which effectuate the delegation to the sentencing court of the license restoration-related executive responsibilities of ordering installation of the devices and certifying that they have been installed does not render the remainder of the statute incapable of execution in accordance with legislative intent." *Id.* at 502. Thus, it is plain that the decision in *Mockaitis* was never intended to, nor did it in fact, render the Interlock Law unenforceable.

Even absent the provisions of the Interlock Law struck down in *Mockaitis,* the remaining statute requires those offenders subject to the legislation to apply to PennDOT for an interlock restricted license as a condition of restoration. Implicit in this "license restoration requirement" is authority in the department to refuse to issue the license absent proof that the device has been installed. Moreover, when the *Mockaitis* Court severed the provisions mandating that the sentencing court order the installation of the interlock device and monitor compliance, we made clear our view that the Interlock Law could still be implemented. It logically follows that PennDOT, the agency charged with the responsibility to issue and regulate motor vehicle licenses, possesses the necessary implied

authority to require the installation of interlock devices in the vehicles of habitual offenders as a condition of restoring driving privileges. The authority of PennDOT, though perhaps implicit, is no less legitimate. Appellee's argument to the contrary would lead to the absurd result that the Interlock Law is incapable of enforcement, and Section 7003(2) is rendered meaningless, a result that is prohibited by 1 Pa.C.S. § 1922 and would be contrary to this Court's analysis in *Mockaitis*. Accordingly, we hold that PennDOT possessed independent statutory authority to enforce the interlock requirement.

■ Appellee also objects that a finding that PennDOT possesses independent enforcement authority would be contrary to the current version of the Interlock Law, 75 Pa.C.S. § 3805.[6] Section 3805 makes clear that, going forward, it is the responsibility of PennDOT to require the installation of interlock devices in appropriate cases:

(a) **General rule.**—If a person violates section 3802 (relating to driving under influence of alcohol or controlled substance) and has a prior offense as defined in section 3806(a) (relating to prior offenses) or if a person has had their operating privileges suspended pursuant to section 1547(b.1) (relating to chemical testing to determine amount of alcohol or controlled substance) or 3808(c) (relating to illegally operating a motor vehicle not equipped with ignition interlock) and the person seeks a restoration of operating privileges, the department shall require as a condition of issuing a restricted license pursuant to this section that the following occur:

(1) Each motor vehicle owned by the person or registered to the person has been equipped with an ignition interlock system and remains so for the duration of the restricted license period.

6. The prior version of the Interlock Law was in Title 42, which pertains to the judiciary and judicial proceedings. In the aftermath of the *Mockaitis* finding that the trial court's involvement in executive aspects of the Interlock Law requirement was unconstitutional, the General Assembly moved the Interlock law to Title 75, pertaining to motor vehicles, which invokes the authority of PennDOT.

(2) If there are no motor vehicles owned by the person or registered to the person that the person so certify to the department. A person so certifying shall be deemed to have satisfied the requirement that all motor vehicles owned by the person or registered to the person be equipped with an ignition interlock system as required by this subsection.

75 Pa.C.S. § 3805. Subsection (g) then states that this new law "shall not give the department authorization to impose an ignition interlock requirement on a person that [sic] has committed an offense under former section 3731 prior to October 1, 2003, without the issuance of a court order." *Id.* § 3805(g).

Appellee contends that subsection (g) prohibits PennDOT from imposing the interlock requirement on him. The plain language of the provision, however, does not support appellee's argument. The General Assembly stated only that **Section 3805** does not authorize PennDOT to impose the interlock requirement during the stated time period. Subsection (g) does not address the proper interpretation of the prior law, which was applicable to earlier cases. Nor does anything in subsection (g) purport to preclude this Court from concluding that the prior law, containing different terms, granted authority to PennDOT to enforce the ignition interlock requirement as an administrative matter. As noted, if this Court were to find that no entity had the authority to enforce the prior law's ignition interlock requirement post-*Mockaitis,* the result would be absurd and unreasonable—indeed, it would render the prior version of the Interlock Law meaningless. For these reasons, we find that PennDOT had authority under the former law to enforce the interlock requirement on repeat DUI offenders post-*Mockaitis,* and properly did so in the case *sub judice.*

Accordingly, the decision of the Commonwealth Court is reversed.

Former Justice NEWMAN did not participate in the decision of this matter.

Chief Justice CAPPY and Justice SAYLOR, EAKIN and BAER join the opinion.

Justice BALDWIN files a dissenting opinion.

Justice BALDWIN, dissenting.

The majority's determination that the Department of Transportation, Bureau of Driver Licensing possessed the authority under the former Ignition Interlock Law to enforce the interlock requirement on repeat DUI offenders is, in my judgment, erroneous. Therefore, I respectfully dissent.

In enacting the former Ignition Interlock Law, 42 Pa.C.S. §§ 7001–7003 (repealed 2003), the General Assembly intended and attempted to place in the judiciary the responsibility of ordering repeat DUI offenders to install interlock systems in their vehicles as a condition to restoration of their driving privileges. 42 Pa.C.S. § 7002(b). In accordance with the former law, the sentencing court was also required to provide the Department of Transportation, Bureau of Driver Licensing (Department) with a "certification" that an appropriate ignition interlock system had been installed on each motor vehicle owned by the offender. 42 Pa.C.S. §§ 7002(b) and 7003(1). Once the Department received the required certification, the Ignition Interlock Law then authorized the Department to issue an ignition interlock restricted license upon the offender's application. 42 Pa.C.S. § 7003(2).

We determined however, in *Commonwealth v. Mockaitis*, 575 Pa. 5, 834 A.2d 488 (2003) that the General Assembly's attempt to place in the courts the executive function necessary to effectuate issuance of an ignition interlock restricted license impermissibly violated the separation of powers doctrine. Accordingly, in *Mockaitis*, those portions of the Ignition Interlock Law delegating to the sentencing court the executive responsibilities of ordering installation of the devices and certifying that they have been installed were severed. (*See Mockaitis*, 575 Pa. at 30, 834 A.2d at 503, severing subsections 7002(b), 7003(1), and the last clause of 7003(5)).[1]

1. *See also Mockaitis*, 575 Pa. at 14, n. 6, 834 A.2d at 493, n. 6, noting that subsection 7002(a) was not directly implicated in *Mockaitis* be-

We noted in *Mockaitis* that our holding that the Ignition Interlock Law improperly delegated executive responsibilities to the sentencing court did not require striking the Act in its entirety. With the unconstitutional provisions severed, we determined that the remaining portions of the statute, specifically § 7003(2), still required recidivist DUI offenders seeking restoration of driving privileges to apply to the Department for an ignition interlock restricted license. Furthermore, we concluded that § 7003(3), which was not severed, precluded an offender in possession of such a restricted license from operating any motor vehicle on a highway in the Commonwealth unless that vehicle was equipped with an approved ignition interlock system. *Mockaitis*, 575 Pa. at 29–30, 834 A.2d at 502–503. Accordingly, since the remaining provisions of the Interlock Ignition Law prevented recidivist DUI offenders from lawfully operating motor vehicles unless they possessed an approved limited license and drove a properly-equipped vehicle, we concluded that "the remaining provisions of the Act still authorize the Department to impose an ignition interlock restriction upon serial DUI offenders who seek restoration of their operating privileges at the expiration of the one-year mandatory suspension of their licenses." *Id.*, 575 Pa. at 31, 834 A.2d at 503.

In the instant case, the majority holds that the Department has independent authority to order installation of ignition interlock devices on vehicles owned by serial DUI offenders. I respectfully disagree. In *Mockaitis*, we determined that the Ignition Interlock Law improperly delegated executive responsibility to the courts. Thus, the provisions of the Ignition Interlock Law which delegated this authority were severed by this Court from the remainder of the statute. Accordingly, the Ignition Interlock Law was left without procedure granting any entity the authority to order installation of ignition interlock devices.[2] To permit the Department to order offend-

cause it applied to first offenses for DUI, but that "in terms of the executive functions it delegates to the judiciary, subsection 7002(a) suffers from the same constitutional infirmity as subsection 7002(b)."

**2.** The version of the Ignition Interlock Law at issue in *Mockaitis* and herein has since been repealed. The current version of the Ignition

ers to install ignition interlock devices would be to read into the statute language that the Legislature did not include or intend to include. In enacting the former Ignition Interlock Law, the Legislature expressly, albeit improperly, placed in the courts alone the authority to order offenders to install ignition interlock devices. The determination in *Mockaitis* that the courts were precluded, by the doctrine of separation of powers, from ordering installation of ignition interlock devices and certifying compliance with those orders, does not permit this Court to substitute the statutory language of the former Ignition Interlock Law and place authority in the Department to order installation of such devices where the Legislature awarded the Department no such authority. "We may not supply words which are not to be found in the statute and so give to it a meaning which it otherwise does not have." *Calvert Distillers Corp. v. Bd. of Finance and Revenue,* 376 Pa. 476, 481, 103 A.2d 668, 670 (1954). "It is clear that we may not, under the rubric of statutory interpretation, add to legislation, matter conspicuously absent therefrom." *Pennsylvania Human Relations Comm'n v. Mars Cmty. Boys Baseball Ass'n,* 488 Pa. 102, 106, 410 A.2d 1246, 1248 (1980). Such a task lies properly with the Legislature.

Since there is no indication within the Ignition Interlock Law that the Legislature intended to grant the Department independent authority to order installation of ignition interlock devices, neither the sentencing court nor the Department has the authority to order recidivist DUI offenders to install such devices on their vehicles. As we determined in *Mockaitis,* however, this does not leave the statute incapable of execution. The Department may employ the remaining valid portions of the Ignition Interlock Law to effectuate the legislative requirement that serial DUI offenders must obtain an ignition interlock restricted license in order to have their driving privileges restored. *Mockaitis,* 575 Pa. at 9, 834 A.2d at 490; 42 Pa.C.S. § 7003(2). Having obtained such a license, the

Interlock Law, 75 Pa.C.S. § 3805, expressly gives the Department independent authority to require the installation of interlock devices in appropriate cases.

offender is not permitted to operate any motor vehicle on a highway within the Commonwealth unless the vehicle is equipped with an approved ignition interlock system. 42 Pa.C.S. § 7003(3). Accordingly, "enforcement of the legislative purpose will still occur in the ordinary course of enforcement of the highway law—just as it does, for example, in relation to drivers whose licenses are subject to other restrictions." *Mockaitis*, 575 Pa. at 30, 834 A.2d at 503.

I would therefore affirm the order of the Commonwealth Court which held that the Department of Transportation lacked independent authority to require Appellee to install an ignition interlock device on his vehicle as a precondition to the restoration of his driving privileges.