J-S53013-16

2017 PA Super 54

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NIKKI LEA VANDYKE | |
| Appellant | No. 1882 MDA 2015 |

Appeal from the Judgment of Sentence September 28, 2015
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000243-2015

BEFORE:  BOWES, SHOGAN AND FITZGERALD,* JJ.

OPINION BY BOWES, J.:                            **FILED MARCH 01, 2017**

Nikki Lea Vandyke appeals from the judgment of sentence imposed following her plea to one count of retail theft, graded as a felony of the third degree by the trial court based upon her prior New York convictions. Appellant contends that the trial court erroneously relied on the factual basis of these prior convictions to determine their similarity to Pennsylvania's retail theft statute.  We agree, and vacate judgment of sentence.

The facts are straightforward.  On January 19, 2015, Appellant entered a Dollar General store and took, without payment, a number of items worth a total of fourteen dollars and fifty cents.  On August 6, 2015, Appellant agreed to plead guilty to one count of retail theft, 18 Pa.C.S. § 3929, which states in pertinent part:

_____
* Former Justice specially assigned to the Superior Court.

**(a)** **Offense defined.--**A person is guilty of a retail theft if he:

(1) takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof;

18 Pa.C.S. § 3929(a)(1). The parties agreed that the trial court would determine the grading of the offense, which is governed by the number of prior offenses.

**(b) Grading.--**

(1) Retail theft constitutes a:

(i) Summary offense when the offense is a first offense and the value of the merchandise is less than $150.

(ii) Misdemeanor of the second degree when the offense is a second offense and the value of the merchandise is less than $150.

(iii) Misdemeanor of the first degree when the offense is a first or second offense and the value of the merchandise is $150 or more.

(iv) Felony of the third degree when the offense is a third or subsequent offense, regardless of the value of the merchandise.

18 Pa.C.S. § 3929(b). Section 3929(b.1) sets forth the procedure for determining the number of offenses:

**(b.1) Calculation of prior offenses.--**For the purposes of this section, in determining whether an offense is a first, second, third or subsequent offense, the court shall include a conviction, acceptance of accelerated rehabilitative disposition or other form of preliminary disposition, occurring before the sentencing on the present violation, for an offense under this section, an offense substantially similar to an offense under this section or under the prior laws of this Commonwealth **or a similar offense under the statutes of any other state** or of the United States.

18 Pa.C.S. § 3929(b.1) (emphasis added).

On September 28, 2015, the parties appeared for sentencing. The Commonwealth introduced, over Appellant's objections, police reports from Appellant's two petit larceny convictions in New York.[1] That statute, in its entirety, reads: "A person is guilty of petit larceny when he steals property." N.Y. P.L. § 155.25. The trial court overruled the objections and reviewed the facts in the reports, which indicated that Appellant stole items from a grocery store and a J.C. Penney's retail establishment. The trial court considered the facts in determining those offenses were similar in nature to 18 Pa.C.S. § 3929 and graded the instant offense as a felony of the third degree.

Appellant filed a timely notice of appeal and complied with the trial court's directive to supply a concise statement under Pa.R.A.P. 1925(b). The court issued its opinion on April 28, 2015. The matter is now ready for

---

[1] Appellant did not object to the lack of a certified record and we accept for purposes of this appeal the existence of the convictions.

our review. Appellant raises one issue, "Whether the [c]ourt erred in grading [Appellant]'s offense as a felony and sentencing her thereon?" Appellant's brief at 4.

Interpretation of § 3929(b.1) is an issue of first impression. That section was inserted by Act No. 2013-131, S.B. No. 731, effective February 21, 2014. Since this presents a question of statutory construction, our standard of review is *de novo* and the scope of our review is plenary. ***Commonwealth v. Barbaro***, 94 A.3d 389, 391 (Pa.Super. 2014) (citation omitted). Interpretation of a statute "is guided by the polestar principles set forth in the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.* which has as its paramount tenet that '[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.'" ***Commonwealth v. Hart***, 28 A.3d 898, 908 (Pa. 2011) (quoting 1 Pa.C.S.A. § 1921(a)).

The critical dispute is this: in determining whether Appellant's New York conviction for Petit Larceny is a similar offense to Pennsylvania's retail theft crime, was the court permitted to consider the facts underlying the New York convictions, which were gleaned from police reports associated with those cases?

According to Appellant, the answer is no. She cites prior decisions of this Court involving the assessment of foreign convictions for the purposes of determining whether out-of-state convictions are crimes of violence or

how to calculate the effect of foreign convictions on a defendant's prior record score. Under Appellant's proffered test, a court would look only to the statutory elements of the foreign conviction to determine similarity. Appellant maintains that since the New York statute generically captures any property theft, the inquiry is over, as the mere existence of a petit larceny conviction sheds no light on whether the conviction is for a retail theft.

The Commonwealth counters that the statute at issue does not require equivalency, only similarity. The Commonwealth argues the intent of the General Assembly, as expressed by the usage of the word similar as opposed to equivalent, was to expand the number of offenses that would constitute prior convictions for purposes of the § 3929(b.1) recidivist provision. The Commonwealth concedes that the felony grading cannot stand if an elements analysis test is applied, as its invocation of the recidivist provision rests on the facts underlying the New York convictions. When considering the actual facts of Appellant's convictions, the Commonwealth highlights that those offenses would clearly constitute a prior retail theft if committed in Pennsylvania. Thus, the instant offense is Appellant's third conviction.

Appellant does not offer an analysis of the pertinent statutory language. We note that the statute at issue herein requires the trial court to assess whether an out-of-state conviction is **similar**. The cases cited by Appellant do not interpret that word.

We nevertheless agree with Appellant that the principles discussed are relevant to our statutory analysis, and we begin with Appellant's invocations of precedent. The elements test urged by Appellant was set forth in *Commonwealth v. Bolden*, 532 A.2d 1172 (Pa.Super. 1987), in which we decided whether a Colorado conviction for attempted second-degree burglary was properly considered **equivalent** to the Pennsylvania offense of criminal attempt (burglary). We set forth the following test:

> [A] sentencing court [must] carefully review the elements of the foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability. Accordingly, the court may want to discern whether the crime is malum in se or malum prohibitum, or whether the crime is inchoate or specific. If it is a specific crime, the court may look to the subject matter sought to be protected by the statute, *e.g.*, protection of the person or protection of the property. It will also be necessary to examine the definition of the conduct or activity proscribed. In doing so, the court should identify the requisite elements of the crime-the actus reus and mens rea-which form the basis of liability.
>
> Having identified these elements of the foreign offense, the court should next turn its attention to the Pennsylvania Crimes Code for the purpose of determining the equivalent Pennsylvania offense. An equivalent offense is that which is substantially identical in nature and definition [to] the out-of-state or federal offense when compared [to the] Pennsylvania offense. The record of the foreign conviction will be relevant also when it is necessary to grade the offense under Pennsylvania law or when there are aggravating circumstances.

*Id*. at 1175-76. The *Bolden* Court then compared the elements of the Colorado offense to the Pennsylvania offense. The Court found "identity of both nature and definition and therefore offense equivalency." *Id*. at 1177.

Having concluded the offenses were equivalent, the facts of the Colorado offense were not discussed.

This test was adopted by the Supreme Court in *Commonwealth v. Shaw*, 744 A.2d 739 (Pa. 2000). Therein, our Supreme Court was called on to determine if Shaw's New York drunk driving conviction was properly considered an equivalent offense to this Commonwealth's offense of driving under the influence of alcohol. New York's drunk driving statute required only that the person's ability "to operate such motor vehicle is impaired by the consumption of alcohol." *Id*. at 743 (quoting N.Y. Veh. & Traf. Law § 1192(1)-(3)). *Shaw* formally adopted the *Bolden* test, and determined that the New York statute was not equivalent to Pennsylvania's DUI offense.

> It logically follows that although both Pennsylvania's DUI offense and New York State's DWAI offense are designed to protect the person and prohibit drunk driving, New York State's DWAI offense protects the public from a broader range of reckless behavior than does Pennsylvania's DUI offense. This is due to the fact that New York State's DWAI offense casts a wider net of criminal liability, making it criminal for individuals to drink to the point of **any impairment** and then proceed to operate a motor vehicle, while Pennsylvania's DUI offense only makes it criminal for individuals to drink to the point of **substantial impairment** and then proceed to operate a motor vehicle. Thus, there is an appreciable difference in the elements of the in-state and out-of-state offenses at issue, and a corresponding difference in the conduct prohibited by the offenses which preclude a finding that the offenses are "equivalents".

*Id*. at 744–45 (2000) (emphasis in original, footnoted omitted). *Shaw* did not discuss the facts of the New York offense.

Thus, neither **Shaw** nor **Bolden** shed light on when and whether a reviewing court may look beyond the elements of the crime to the actual facts of the offense to determine equivalency. That issue was discussed in **Commonwealth v. Northrip**, 985 A.2d 734 (Pa. 2009), in which our Supreme Court applied **Shaw**/**Bolden** to determine if Northrip's New York conviction for Arson in the Third Degree, N.Y. Penal Law § 150.10, was an equivalent offense to Arson as defined under 18 Pa.C.S. § 3301(a). The inquiry was necessitated by 42 Pa.C.S. § 9714, which required a mandatory minimum sentence if the defendant had previously been convicted of a crime of violence, which was further defined to include "arson as defined in 18 Pa.C.S. § 3301(a) . . . or an equivalent crime in another jurisdiction." **Id**. at 548.

In our decision, we stated that the "critical inquiry" was whether a hypothetical scenario could be imagined that sufficed for conviction of Arson in the Third Degree in New York yet was insufficient for an Arson conviction under § 3301(a) in Pennsylvania. We fashioned one such scenario and concluded the offenses were not similar. **Id**. at 554. The Commonwealth argued to our Supreme Court that a court should not engage in hypothetical scenarios and must instead look to the actual facts underlying the conviction, which, in Northrip's case, demonstrated that his "conduct would be deemed culpable under both statutes, thereby making them equivalent[.]" **Id**. at 741. The **Northrip** Court agreed that considering

- 8 -

hypothetical scenarios is unwarranted, but also rejected the Commonwealth's fact-based approach:

> Both the statute's structure and its plain language demonstrate that for most crimes, **the focus is not on the facts underlying a conviction, but rather on the statute that triggered the conviction**. Section 9714's reach is targeted and specific. With respect to arson, the statute sets out a singular subsection-Section 3301(a). Section 9714 does the same with other crimes, listing either a single type of crime or a specific subsection or subsections of particular crimes, most of which are first-degree felonies. . . .
>
> Even more telling is the fact that with respect to burglary, Section 9714 does not set out a statutory subsection at all. Instead, it explicitly directs the sentencing court to apply a fact-based test for determining whether the prior conviction is a crime of violence. Section 9714 includes only one type of burglary in its purview-one that is not set out in a specific subsection of the burglary statute: "burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present." 42 Pa.C.S. § 9714(g). *See* 18 Pa.C.S. § 3502 (defining burglary as the unlawful entry onto a premises with the intent to commit a crime therein, regardless of whether someone else is present).
>
> This very specific and deliberate method of defining crimes of violence in Section 9714 demonstrates the Legislature's clear intent that with respect to all crimes except burglary, the focus is on the crime for which the defendant was convicted, not the factual scenario underlying that crime. Section 9714 both directs and limits the sentencing court's inquiry. In keeping with the statute's mandate then, we must focus on the crime of arson and its elements, not the facts underlying Appellee's conviction.

*Id*. (emphasis added, footnote omitted). Thus, the Court attached significance to the fact that only one of the enumerated crimes of violence, burglary, specifically required a court to make a factual determination. Now-Chief Justice Saylor authored a concurring opinion, expressing his view that

various complexities attend the administration of an enhancement scheme accounting for specific factual elements, including: provision for the determination of particular facts in a system employing general verdicts; and the involvement of constitutional issues connected with sentencing enhancements, such as those arising under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In the face of such complexities, and consistent with the application of judicial restraint in defining the scope of criminal liability, I continue to support the notion that "equivalent crimes" are to be evaluated at an elemental level, absent more specific direction from the Legislature. *Accord Commonwealth v. Shaw*, 560 Pa. 296, 744 A.2d 739 (2000). To the degree the General Assembly wishes to effectuate a change, there are various models available, which may be studied in devising a clear and coherent statutory framework that is consistent with governing law.

*Id*. at 745 (Saylor, J., concurring).

Finally, we recently stated in *Commonwealth v. Spenny*, 128 A.3d 234 (Pa.Super. 2015), that a reviewing court may not consider police reports in determining equivalency for purposes of calculating a defendant's prior record score. *Spenny* interpreted 204 Pa.Code § 303.8(f)(1), which states that "An out-of-state, federal or foreign conviction or adjudication of delinquency is scored as a conviction for the current equivalent Pennsylvania offense." 204 Pa.Code § 303.8. We held that identifying the Pennsylvania equivalent offense is limited to an examination of the foreign crime's elements.

[W]hen determining the Pennsylvania equivalent statute for a prior, out-of-state conviction for prior record score purposes, courts must identify the elements of the foreign conviction and on that basis alone, identify the Pennsylvania statute that "is substantially identical in nature and definition" to the out-of-state offense. *Bolden*, 532 A.2d at 1176. **Courts are not**

> **tasked with ascertaining the statute under which the
> defendant would have been convicted if he or she had
> committed the out-of-state crime in Pennsylvania**. Rather,
> we must compare "the elements of the foreign offense in terms
> of classification of the conduct proscribed, its definition of the
> offense, and the requirements for culpability" to determine the
> Pennsylvania equivalent offense. *Northrip*, 985 A.2d at 740
> (quoting *Shaw*, 744 A.2d at 743).

*Spenny*, *supra* at 250 (footnote omitted, emphasis added).  In reaching

this conclusion, we noted that the Legislature, post-*Northrip*, omitted the

language in § 9714 directing a court to consider the facts of an out-of-state

burglary offense:

> Subsequent to the *Northrip* decision, the Legislature did act,
> but in the opposite manner Justice Saylor predicted. Instead of
> amending section 9714 to require courts to review the facts
> underlying a prior, out-of-state conviction to determine its
> Pennsylvania equivalent, the Legislature removed from section
> 9714 the factual determination required for a burglary
> conviction, replacing it with a specific subsection of the burglary
> statute. *See* 42 Pa.C.S.A. § 9714(g) (as amended July 5, 2012,
> effective Sept. 4, 2012).

*Id*. at 249.  We stated that "by amending section 9714(g) to remove any

factual analysis of the prior, out-of-state conviction, we presume that the

Legislature did so with the intent of adopting the Supreme Court's strict-

elements interpretation of the *Bolden* test." *Id*. at 250.

With this backdrop in mind, we now turn to our interpretation of §

3929(b.1) and its language, "similar offense under the statutes of any other

state."  We apply the following principles.

> In all matters involving statutory interpretation, we apply the
> Statutory Construction Act, 1 Pa.C.S. §§ 1501 *et seq.*, which

directs us to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a). To accomplish that goal, we interpret statutory language not in isolation, but with reference to the context in which it appears. *See Consulting Eng'rs Council of Penna. v. State Architects Licensure Bd.,* 522 Pa. 204, 560 A.2d 1375, 1377 (1989). A statute's plain language generally provides the best indication of legislative intent. *See, e.g., McGrory v. Dep't of Transp.,* 591 Pa. 56, 915 A.2d 1155, 1158 (2007); *Commonwealth v. Gilmour Mfg. Co.,* 573 Pa. 143, 822 A.2d 676, 679 (2003); *Penna. Fin. Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). Only where the words of a statute are ambiguous will we resort to other considerations to discern legislative intent. 1 Pa.C.S. § 1921(c)[.]

*Commonwealth v. Kingston*, 143 A.3d 917, 922 (Pa. 2016) (emphasis added, some citations omitted).

Preliminarily, we note that *Bolden* and its related precedents do not bind us, as the pertinent statutory language does not require equivalency or even substantial similarity. Rather, the foreign offense must merely be similar. That word, as an adjective modifying offense, includes all offenses "having characteristics in common, alike in substance or essentials." Equivalent offenses, on the other hand, would include only those offenses "corresponding or virtually identical esp. in effect or function." Webster's Ninth New Collegiate Dictionary (1986).

We cannot ignore the fact the Legislature chose similar as opposed to equivalent. We agree with the Commonwealth that this choice of language clearly indicates an intent to expand the number of offenses that would

- 12 -

count as a prior conviction. However, we think that expansion simply means that the elements test itself is loosened. Under the elemental test for equivalency announced in **Bolden**, we required "identity of both nature and definition." **Bolden**, **supra** at 1177. The similar offense test simply means that more crimes will qualify under an elements analysis, and identity of both nature and definition is not required. It does not mean we abandon the elements test as the singular focus. As we stated in **Spenny**: "Courts are not tasked with ascertaining the statute under which the defendant would have been convicted if he or she had committed the out-of-state crime in Pennsylvania." **Spenny**, **supra** at 250. The Commonwealth, by highlighting the facts of the New York offenses, is suggesting we must do exactly that.

We draw support for our conclusion from **Northrip's** statement that "the statute's structure and its plain language demonstrate that for most crimes, the focus is not on the facts underlying a conviction, but rather on the statute that triggered the conviction." **Northrip**, **supra** at 741. The same is true here. Nothing in § 3929(b.1) indicates that a reviewing court is to consider the facts underlying the convictions. In **Spenny**, we deemed it significant that the Legislature amended 42 Pa.C.S. § 9714 post-**Northrip**. Then-Justice Saylor's opinion cited a Georgia statute as a possible model for permitting a court to review the facts underlying out-of-state convictions. **Id**. at 745, n.2 (Saylor, J., concurring). That statute specifically directed the reviewing court to determine if the foreign crimes, if committed within

Georgia, would be felonies under Georgia law. *Id*. The statute herein includes no such directive. The absence of any such language indicates that the General Assembly intended reviewing courts to cabin their analysis to the elements of the crimes. To the extent there is an ambiguity regarding the ability of a court to consider the facts of the out-of-state conviction, we are mindful that all penal provisions shall be strictly construed. 1 Pa.C.S. § 1928(b)(1). This principle requires that all ambiguities must be resolved in favor of the accused. *Commonwealth v. Lynn*, 114 A.3d 796, 818 (Pa. 2015).

Thus, we hold that the trial court improperly focused on the facts of the offenses, not the similarity of the respective statutory elements. Since the court applied the wrong test, and an interpretation of § 3929(b.1) presents a question of law, we shall address whether the Petit Larceny crime is similar, under an elements test, to retail theft as defined in 18 Pa.C.S. § 3929. We conclude that it is not, and the Commonwealth does not dispute this conclusion. "Pennsylvania's Retail Theft and New York's Petit Larceny . . . are, however, similar offenses **justifying further analysis of the factual basis** from the . . . convictions in New York[.]" Commonwealth's brief at 4 (emphasis added). The petit larceny crime encompasses all thefts of property. New York law further defines larceny at N.Y. P.L. § 155.05 as stealing property through, *inter alia*, the following methods: embezzlement, extortion, obtaining property by false pretenses, and the issuing of a bad

check. Property is defined to include, *inter alia*, personal property, money, computer data, or anything of value provided at a charge, including gas, water, or electricity. N.Y. P.L. § 155.00. Thus, all individuals convicted of stealing items from a retail store have committed petit larceny, but few persons convicted of petit larceny have committed retail theft.[2] Clearly, the statute is similar to theft, but it is not similar to **retail** theft. Accordingly, we find that Petit Larceny is not similar to Retail Theft, and Appellant's conviction should have been graded as a summary offense.

Finally, we briefly note that Appellant's guilty plea subjected her only to a summary offense and a maximum of ninety days imprisonment. 18 Pa.C.S. § 106(c)(2). This maximum was increased upon the trial judge's determination of facts. This sentence raises the concern expressed by Then-Justice Saylor in his **Northrip** concurrence regarding **Apprendi v. New Jersey**, 120 S.Ct. 2348, 2362-63 (2000), wherein the United States Supreme Court held that "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." **Id**. at 2362-63.

---

[2] A conviction for petit larceny would apply to the theft of items from a retail establishment, but would also apply to theft of a bike from outside a home, tools from a construction site, or any number of crimes not involving retail thefts.

The United States Supreme Court has expressed that there are Sixth Amendment concerns when a sentencing judge determines facts regarding prior convictions. The United States Supreme Court has, on several occasions, discussed the issue in the context of the Armed Career Criminal Act, 18 U.S.C.A. § 924, a federal statute which contains recidivist provisions triggering a fifteen-year mandatory minimum sentence for certain federal defendants who have three prior convictions for "violent felonies." In **Mathis v. United States**, 136 S.Ct. 2243, 2252 (2016), the High Court stated that

> This Court has held that only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction. **That means a judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense**. He is prohibited from conducting such an inquiry himself; and so too he is barred from making a disputed determination about "what the defendant and state judge must have understood as the factual basis of the prior plea" or "what the jury in a prior trial must have accepted as the theory of the crime." He can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.

**Id**. at 2252 (citations omitted). We need not discuss at length these precedents; we simply recognize the High Court's expression of Sixth Amendment concerns when a court analyzes anything more than the elements of a crime. The Statutory Construction Act states that "the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth." 1 Pa.C.S. § 1922(3). This point further

militates in favor of a construction that limits the analysis to the elements of the foreign crime without regard to the facts of those convictions.

Accordingly, we vacate the judgment of sentence and remand for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/1/2017